City of Chicago, a Municipal Corporation, Plaintiff-Appellee, v. James E. Mulligan Enterprises, Inc., Adelor J. Petit, Jr., Clark Dykes and Edna Dykes, His Wife, Defendants.

On Appeal of Adelor J. Petit, Jr., Clark Dykes and Edna Dykes, His Wife, Appellants.

Gen. No. 48,014.

First District, Third Division.

September 21, 1960.

Rehearing denied November 7, 1960.

481

Daniel Costigan and Alexander J. Ross, of Chicago (Richard J. Gleason, of counsel) for appellants.

John C. Melaniphy, Corporation Counsel of the City of Chicago (Sydney R. Drebin and Edward E. Plusdrak, Assistant Corporation Counsel, of counsel) for appellee.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from a decree authorizing the City of Chicago to demolish a five-story building at 456–58 North Halsted Street, Chicago. The decree also absolves the city of any liability caused by the demolition and authorizes a lien against the premises in favor of the city for reimbursement of any expenses thereby incurred. An appeal was taken to the Supreme Court of Illinois upon the theory that defendants were deprived of a freehold. The Supreme court transferred the case to this court.

On March 8, 1957, plaintiff filed a complaint in chancery praying for a mandatory injunction commanding defendants to demolish the building in question or to furnish satisfactory proof of immediate repair or, in the alternative, praying that the city be authorized to demolish the building. The proceeding was brought pursuant to provisions of the Cities and Villages Act, Ill. Rev. Stat. Chapter 24, secs. 23–70.2 and 23–71 (1955). Section 23–70.2 reads as follows:

> [The corporate authorities of a municipality shall have the power] "To demolish, repair or enclose, or cause the demolition, repair or enclosure of dangerous and unsafe buildings or uncompleted and abandoned buildings. The corporate authorities shall apply to the Circuit Court of the county in which such building is located for an order authorizing such action to be taken with respect

484

to any such building if the owner or owners thereof, after at least 30 days written notice so to do, shall have failed to put such building in a safe condition or to demolish it. . . ."

After this, the statute makes provision for recovery by the city from the owner for such demolition and provides for a lien therefor, subject to existing liens and encumbrances, and for a method of creating and enforcing such lien.

The other section, 23–71, upon which the city relies provides as follows:

"23–71. Fire limits—Defective buildings.) For the purpose of guarding against the calamities of fire, to prescribe the limits within which wooden buildings shall not be erected, placed or repaired, without permission, and, whenever buildings within the fire limits have deteriorated or have been damaged by any means to the extent of fifty per cent of their value, to direct that such buildings shall be torn down or removed, and to prescribe the manner of ascertaining whether the specified damage has occurred."

A brief statement of the facts is desirable for an understanding of the proceedings in the trial court. The building was erected in 1880, primarily of brick construction. Prior to December 1955 it was used as a cubicle hotel, that is, a hotel containing many small rooms. On December 18, 1955, a fire broke out on the premises, causing severe damages to both the interior and exterior of the building. Fifteen months later, the building being still unrepaired, the city brought this suit. There was ample testimony on behalf of the city that the building had deteriorated or was dilapidated to the extent of more than sixty per cent and that it presented a dangerous condition. The building was not repaired following the fire because of a dis-

pute between the owner, James E. Mulligan Enterprises, Inc., and the alleged purchase money mortgage holders, Clark and Edna Dykes, as to who should receive the proceeds of the fire insurance policy on the building. That issue is the subject of a lawsuit unresolved as of the date of the filing of the appeal. It also appears that another fire occurred on the premises following the decree, and that this fire may have created such damage as to make this case moot, but no action to that end has been taken in this court.

On January 18, 1957, the City Council of the City of Chicago passed a resolution declaring the building to be a public nuisance, dangerous and hazardous, and directing the City Building Commissioner to have it demolished. No point is made that this ordinance was in itself notice of the city's intention.

The first point made by defendants is that under the terms of the statute they were entitled to at least thirty days' notice, and that such notice is a condition precedent to the filing of suit. Plaintiff asserts that the notice is not a condition precedent to the suit; that the filing of the complaint and service of summons on defendants and the lapse of much more than thirty days before actual application for the order was sufficient notice. Under the rules of civil practice in this state, defendants had thirty days after service in which to appear and file their pleadings. Ill. Rev. Stat., Ch. 110, Sec. 101.8 (1955). Following that, the city had twenty days in which to reply. During that period the case was not at issue and defendants could have given notice to the city of their intention to make the repairs or could have submitted plans therefor or have commenced the demolition of the building themselves without court order. In fact, the complaint prays that defendants be required to demolish the building or submit plans and specifications for its repair.

Complaint was filed in this case on March 8, 1957. The answer of defendant Mulligan was filed on April 8, 1957. The answer of defendants Clark and Edna Dykes was filed on April 11, 1957. The case actually came on for trial on July 8, 1958. The trial lasted about a week. Not until the end of the trial was the city in position legally and formally to ask the court for an order directing the demolition of the building. Prior to this the city could only ask for trial, not for an order. In the meantime defendants had approximately fifteen months from the filing of the complaint and fourteen months after answer (when it must be presumed that they knew what the city was seeking) in which to do the work themselves. Thus, they not only had the statutory notice of thirty days, but fourteen times that period.

The purpose of the act is clear. It is to give the city a quick and effective means of removing those unused and dilapidated structures that present danger and blight. The city proceeded far more leisurely than the urgency of the statute contemplated. Even if we were to assume that there was some basis in the wording of the statute for the argument made by defendants that the service of notice was a condition precedent to suit, that is so far out of keeping with the purposes and spirit of the statute, we would not consider it controlling. In determining the legislature's intent, consideration must be given to the entire statute, its nature, objects and the consequences which would result from construing it one way or another. Carrigan v. Illinois Liquor Control Commission, 19 Ill.2d 230, 233, 166 N.E.2d 574. The spirit or intention of the law prevails over the letter thereof. It is generally recognized that a situation or thing which is within the spirit, object and meaning of the statute, although it is not within the letter thereof, is regarded as within

487

the statute. 34 I.L.P., Statutes, Sec. 115 (1958) pp. 96–7. People v. Thillens, 400 Ill. 224, 231, 79 N.E.2d 609; Clare v. Bell, 378 Ill. 128, 131, 37 N.E.2d 812. The provisions of an act emphasizing a particular purpose are to be liberally construed to the end that such purpose be effectuated. People ex rel. Bowen v. Hughes, 370 Ill. 255, 258, 18 N.E.2d 453.

■ ■ The statute does not say that notice is a condition precedent to suit nor does it prescribe the form of notice. The time prescribed is related not to the bringing of suit, but to the application for an order directing demolition. Two things are intended to be accomplished by the notice: first, to give the owner the choice of demolishing the structure or putting it in safe condition; and second, having made his decision, to have not less than thirty days within which to comply before the city asked for and got its order from the court. A legal proceeding was contemplated, and it must be assumed that in such a proceeding the legislature knew that time was given for the forming of issue and then trial, and not until then was the city in position to say to the court: "We now want the order." To construe the statute as defendants urge would give them not less than sixty days. In fact, it took fifteen months in this case.

Defendants rely upon McCarthy v. City of Chicago, 312 Ill. App. 268, 38 N.E.2d 519; and Haj v. American Bottle Co., 261 Ill. 362, 103 N. E. 1000. Neither case supports their position. The Haj case, supra, holds that the notice requirement of the attorney's lien act contemplated personal service of notice rather than notice by mail. In the instant case, no such issue is raised. The complaint was duly filed and defendants had due notice of it, as their answers show. The McCarthy case, supra, was a personal injury suit against the city and notice thereof was not served on the city clerk as required by statute. The legislative intent

that in such cases notice shall be a condition precedent to the filing of suit is clear from the section which provides that if statutory notice is not given, any civil action so commenced shall be dismissed and the cause of action barred forever. Ill. Rev. Stat., Ch. 24, Sec. 1–12 (1959). The statute before us has no such language. On the contrary, it requires notice to be given prior to the making of application to the court for the order. Notice is not the chief purpose of the act but is incidental to the authorization given to the municipality to demolish unsafe, dangerous, incomplete or abandoned structures.

██ ██ Plaintiff argues that notice was waived by all the defendants proceeding to trial without making any point on the question of notice and that they cannot now for the first time raise the issue on appeal. The only answer defendants make to this contention on the part of plaintiff is that the issue of improper notice was made by the pleadings. At no time was the point made during the course of the trial. Nor was it made on motion for new trial nor on the petition for rehearing and to vacate the decree. Such issue cannot be made for the first time on appeal. Graham v. City of Chicago, 346 Ill. 638, 645, 178 N. E. 911; Murphy v. Kumler, 344 Ill. App. 287, 291, 100 N.E.2d 660; Murphy v. City of Chicago, 318 Ill. App. 166, 169, 47 N.E.2d 494. The theory upon which a case is tried in the lower court cannot be changed on review. In Re Estate of Leichtenberg, 7 Ill.2d 545, 131 N.E.2d 487.

██ The next point made by defendants is that there was no proof either of the original or the deteriorated value of the premises. So far as Section 23–70.2 is concerned, no proof of value is necessary. The issue is whether the building was dangerous and unsafe or incompleted and abandoned. On that issue the court received evidence. When the trial commenced two and a half years after the fire, no repairs had yet

been made. There was testimony that the copings were in dangerous condition; that people might get into the building and fall through holes in the floor; that the shell of the building had loose bricks which could fall and kill some one. Seven photographs were introduced showing the dilapidated condition of the building. On this evidence the chancellor found that the building was dangerous and in unsafe condition. That finding is amply supported by the evidence. Indeed, defendants do not specifically challenge it. Their one point on that phase of the case is that value was not shown, as required by Section 23-71. That section empowers the city to order a building torn down or removed when it is damaged to the extent of fifty per cent of its value. The court heard testimony that the building was deteriorated more than sixty per cent. There was testimony to the contrary, but the decree must stand unless it is against the manifest weight of the evidence. Defendants say there was no proof of original and present value. The conclusions of witnesses were based on physical aspects of the building. They explained their findings by detailing the items destroyed or in bad condition as against those remaining and in good condition. That was a sound and proper method of determining the issue. It appears to us that this issue is relevant only insofar as Section 23-71 offers additional support for the legislative intention as to the city's power to take action with respect to this building.

Decree affirmed.

McCORMICK and DEMPSEY, JJ., concur.