THE CITY OF PERU, Plaintiff-Appellee, *v.* EUGENE BERNARDI, SR., *et al.*, Defendants-Appellants.

Third District    No. 79-6

Opinion filed January 17, 1980.—Rehearing denied February 28, 1980.

Larry Hofreiter, of Ottawa, for appellants.

Charles W. Helmig and Douglas J. Schweickert, both of Peru, for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

This appeal arises from a complaint for foreclosure of a demolition lien filed by the plaintiff-appellee, City of Peru, against the defendants-appellants, Eugene and Teresa Bernardi, the owners of the land upon which formerly stood the Peru Hotel. The complaint alleged that, pursuant to a previous court order, the Peru Hotel was demolished and that the city had paid for the demolition and requested a judgment for the amount of the expenditure and foreclosure of its lien. The defendant denied the city's right to recover the amount they claimed. The trial court found in favor of the city and the defendant appeals. We affirm.

The city demolished the Peru Hotel pursuant to an order entered in a cause entitled City of Peru v. Bernardi, La Salle County No. 74-1-103MC, which was affirmed by this court in *City of Peru v. Bernardi* (1976), 43 Ill. App. 3d 31, 356 N.E.2d 636. The decree provided that the city shall have a first lien upon the premises for its expenditure. Prior to demolition the plaintiff hired an engineering firm to prepare specifications for the demolition and invited bids for the work in August 1975. On August 18, 1975, the city awarded the contract to the lowest bidder, Higgins Construction Company, which submitted a bid of $27,498.60. Higgins' proposal contained an offer to deduct $4,400 from the price if the basement of the structure could be filled with rubble instead of dirt. The city decided to accept the base bid of $27,498.60, feeling that earth fill would be more satisfactory.

On August 25, 1975, a major fire occurred which resulted in the roof structure being burned and fallen in, one-third of the fourth floor being burned and fallen and one-sixth of the third floor being burned and fallen. There was some dispute as to whether the fire made demolition of the structure more or less expensive. After the fire, Jack Boehm, a competitor of Higgins, made an offer to the Bernardis to demolish the structure for $17,000, but he never made this offer to the city.

On August 26, 1975, Higgins moved equipment to the demolition site. Assembling took place on August 27 and 28 and actual demolition commenced on August 29. By September 24, 1975, the building had been torn down and only grading and cleanup remained. Higgins' records shown no work being performed between October 2, 1975, and November 3, 1975. From November 3 to November 5 the sidewalks around the site were worked on. The last day work was done on the project occurred on November 25, 1975, when there was placement of some dirt around the sidewalk.

The city filed its claim of lien on December 23, 1975, consisting of a sworn statement from the city clerk that work was started on August 28, 1975, and completed on October 25, 1975. The city clerk denied personal knowledge of the starting and completion dates, stating she received this information from the city engineer, Mr. Etzenbach. The trial court found that the work done in November was part of the demolition, that the statement of lien complied with the intended purpose of the demolition statute and that the sum spent by the city was a reasonable amount. It then entered judgment for the city for $27,498.60 and foreclosure of its lien. The defendant then filed a post-trial motion which was denied, and then filed this appeal.

On appeal, defendant raises two issues: (1) whether the trial court erred in finding that the city had a valid lien under the demolition lien

statute; and (2) whether the trial court's decision that the reasonable cost of demolishing the structure was $27,498.60 was against the manifest weight of the evidence.

Defendant urges that the city did not have a valid lien under the demolition statute on two grounds, that the notice filed was not timely and that the notice did not state the date or dates when the expense occurred. Under the demolition statute, "The cost of such demolition or repair incurred by such municipality * * * is recoverable from the owner or owners of such real estate and is a lien thereon * * * provided that, within 60 days after such repair or demolition, the municipality * * * who incurred such cost and expense shall file notice of lien of such cost and expense incurred in the office of the recorder of deeds in the county in which the real estate is located * * *. The notice must consist of a sworn statement setting out * * * (3) the date or dates when the cost and expense was incurred by the municipality * * *." Ill. Rev. Stat. 1975, ch. 24, par. 11—31—1.

Defendant argues that the building was razed by September 24, 1975, and therefore, demolition was completed by September 24. Defendant argues that the work on the sidewalks, which was the only work done after September 24, is not demolition. If it is not, and demolition was completed by September 24, then the city's filing of notice on December 23 was not timely.

In support of his contention, defendant cites several cases which distinguish between the razing of a building and the removal of the rubble afterwards to show that "demolish" refers only to razing the building. We do not find these cases persuasive. The only Illinois case defendant cites, *Lockwood v. Goldman* (1952), 345 Ill. App. 324, 102 N.E. 828, is a contract case dealing with parol evidence. In that case the court found that, as between themselves, the parties had not intended for the defendant to remove the rubble and, therefore, in that contract, demolition did not encompass removing the rubble. Thus, Lockwood has no precedential value in determining what the legislature intended the word "demolish" to mean.

Defendants cites two cases from other jurisdictions which he claims support his contention. They are both inapposite. *Durrett v. Woods* (1923), 155 La. 533, 99 So. 430, refers to a Louisiana workmen's compensation statute which used both the words "demolition" and "removal," and that court therefore found that the legislature intended to create separate categories. The statute in the instant case does not create such a dichotomy. Therefore, *Durrett* is not applicable here.

Defendant's reliance on *Lexington Insurance Co. v. Ryder System, Inc.* (1977), 142 Ga. App. 36, 234 S.E.2d 839, is also misplaced. *Lexington* dealt with an insurance contract in which the contract used both

"demolition" and "removal," thus creating a situation in which removal of debris was covered even though it wasn't caused by demolition. For that reason the court held that demolition and removal were not synonymous. While we agree that the terms are not synonymous, *Lexington* is not applicable in determining whether or not, in the demolition lien statute, demolition encompasses removal.

■■ We believe that, as used in the demolition lien statute, the word demolition includes removal of the debris caused by the demolition. The purpose of the demolition statute is to provide municipalities the power to abate public nuisances which may prove detrimental to public health, safety and welfare. (*City of Chicago v. Logan* (1965), 56 Ill. App. 2d 291, 205 N.E.2d 795; *City of Chicago v. Mulligan Enterprises, Inc.* (1960), 27 Ill. App. 2d 481, 170 N.E.2d 13.) Razing a building is hazardous activity which results in rubble strewn around the site. If demolition were to be so narrowly construed as to only mean razing, the city would still be left with an unsafe situation. Making the site safe again for the public must include disposing of the rubble and repairing the damage done by the razing of the building. Therefore, we believe that demolition includes removal of the rubble and repair of the damage caused by the razing of the building.

■ In the instant case, Higgins Construction spent significant time, from November 3 to November 5, repairing sidewalks damaged by the razing. This repair constitutes part of the demolition and, since the claim of lien was filed December 23, within 60 days of the work, it was timely filed.

Defendants next argument is that, regardless of whether or not the claim was timely filed, the notice of lien was inadequate in that it did not state the date or dates when the expense was incurred. "The notice must consist of a sworn statement setting out * * * (3) the date or dates when the cost and expense was incurred by the municipality." (Ill. Rev. Stat. 1975, ch. 24, par. 11—31—1.) The notice of lien filed by the city stated that work was begun on August 25, 1975, and was completed on October 25, 1975. Defendant argues that these dates are inaccurate in that Higgins' machines were moved to the construction site August 26 and work did not commence until August 29 and because the date of completion is stated as October 25 and some work continued until November. Therefore, defendant argues, the notice of lien did not contain the date or dates when the cost or expense was incurred by the city. The trial court found that the notice of lien "adequately compl[ied] with the intent and purpose" of the statute. We agree.

■■ We first note that the statute itself is ambiguous. It states that the date when the cost was incurred must be given. However, it is unclear as to when the cost was incurred. Was the cost incurred on the date the contract was executed, August 25, or was it incurred during the course of

the demolition, or was it incurred only when the demolition was complete, or was it incurred when the invoice was approved for payment? The statute provides no answer. In the absence of such an answer, we must look to see if the notice in the present case was adequate to give fair notice to the defendant.

■■ This issue has not previously been addressed by this court. We believe the statute to be similar to the mechanic's lien statute (Ill. Rev. Stat. 1975, ch. 82, par. 1 *et seq.*) so that we may look to it to determine how the demolition lien statute should be interpreted. In *United Cork Companies v. Volland* (1937), 365 Ill. 564, 7 N.E.2d 301, a claim for a lien was filed which alleged that the contract was completed December 31, 1930, when, in fact, the evidence at trial showed that the work was not completed until April 6, 1931. In permitting the lien, the court held that the variance between the date in the claim for the lien and in the proof at trial did not preclude foreclosure where the defendants were not prejudiced by the variance and the variance was not substantial or material.

■■ We believe that in the instant case, the fact that the claim alleged that the work was completed October 25 when it was not completed until late November is not substantial or material. Certainly the defendant was in no way prejudiced by the slight variance. Litigation concerning the Peru Hotel had lasted for years before actual demolition, and defendants were well aware of the situation regarding the claim of lien. Therefore, we agree with the trial judge that the notice was adequate to comply with the intent and purpose of the law.

Having ruled that the city has a valid lien for its expenditure in that the claim of lien was timely filed and the notice provided was adequate, we turn to the defendant's second issue on appeal, whether or not the trial court's decision that the reasonable cost of demolishing the structure was $27,498.60 was against the manifest weight of the evidence. We believe that it was not.

■■ Defendant first argues that the amount of the lien is too high in that the city did not take advantage of Higgins' offer to use rubble and wood to fill in the basement, which would have been $4,400 cheaper. Instead, the city accepted Higgins' bid to fill the basement with dirt. The purpose of the statute is to permit the city to abate a public nuisance and provide for the public's safety. The city counsel felt it would be safer if the basement was filled with dirt and the trial judge ruled this was reasonable. We agree and certainly cannot find that the trial judge's holding was against the manifest weight of the evidence.

■■ Defendant next argues that the amount of the lien was too high in that the specifications were too stringent and made the cost of demolition unreasonably high. The specifications were set by the city to ensure the

public safety. The trial judge did not find them to be unreasonable, and we see no reason to disturb this ruling.

Defendant's final arguments are that the amount of the lien was too high in that the fire of August 25 made the demolition less costly, and, further, that Higgins' records and testimony do not substantiate that the amount of the lien was a reasonable cost of demolition. These two issues were disputed at trial, and evidence was introduced to support both sides. After hearing all the evidence, the trial judge ruled that the fire increased, rather than reduced, the cost of demolition and that Higgins' records did substantiate the amount of the lien.

■ A reviewing court will not disturb a trial court's findings unless they are manifestly against the weight of the evidence. In the instant case there was ample evidence in the record on which the trial judge could have determined that the fire raised the cost of demolition and that Higgins' records justified the amount of the lien. Therefore, we cannot say that the trial judge's decision was against the manifest weight of the evidence.

For the above mentioned reasons the judgment of the Circuit Court of La Salle County is affirmed.

Affirmed.

STENGEL and BARRY, JJ., concur.