# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Village of Ringwood v. Foster*, 2013 IL App (2d) 111221

---

| | |
|---|---|
| Appellate Court Caption | THE VILLAGE OF RINGWOOD, Plaintiff-Appellee, DEBORAH FOSTER, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-11-1221 |
| Filed | March 21, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings seeking the demolition of defendant's fire-damaged building, the trial court's order reissued on remand after a lienholder was given notice was upheld over defendant's arguments that the lienholder was not properly notified, since the trial court's actions on remand ensured that the lienholder's rights to participate in the proceedings were protected, despite defendant's tardiness in raising her objection to the failure to join the lienholder, and defendant was not entitled to present fresh evidence as to the state of the damaged building. |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 07-MC-2; the Hon. Michael J. Sullivan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Carmen V. Speranza and Stephen Speranza, both of Speranza & Bates, of Lake Forest, for appellant.

Bernard V. Narusis of Narusis & Narusis, of Cary, for appellee.

Panel

JUSTICE BIRKETT delivered the judgment of the court, with opinion. Justices McLaren and Zenoff concurred in the judgment and opinion.

## OPINION

¶ 1      This case involves the continuing efforts of plaintiff, the Village of Ringwood, to remediate the public hazard it claims is posed by a fire-damaged apartment building owned by defendant, Deborah Foster. The fire occurred in October 2006, and in January 2009 the trial court authorized plaintiff to demolish the building. In *Village of Ringwood v. Foster*, 405 Ill. App. 3d 61, 85-86 (2010) (*Foster I*), we vacated the demolition order because the record suggested, and plaintiff did not dispute, that there was a lien on the property and that plaintiff failed to provide the lienholder the requisite statutory notice of plaintiff's intent to seek a demolition order. On remand, plaintiff issued a notice to First National Bank of McHenry (First National), the lienholder. Over defendant's objection that the notice was deficient, the trial court reissued the demolition order. Defendant appeals, and we affirm.

¶ 2                          I. BACKGROUND
¶ 3                          A. *Foster I*
¶ 4      Plaintiff's July 2007 complaint seeking authorization to demolish the building was brought pursuant to section 11-31-1(a) of the Illinois Municipal Code (Code) (65 ILCS 5/11-31-1(a) (West 2006)). The complaint named defendant alone. Section 11-31-1(a) provides in relevant part:

"(a) The corporate authorities of each municipality may demolish, repair, or enclose or cause the demolition, repair, or enclosure of dangerous and unsafe buildings or uncompleted and abandoned buildings within the territory of the municipality and may remove or cause the removal of garbage, debris, and other hazardous, noxious, or unhealthy substances or materials from those buildings. ***

The corporate authorities shall apply to the circuit court of the county in which the building is located (i) for an order authorizing action to be taken with respect to a building if the owner or owners of the building, including the lien holders of record, after at least 15 days' written notice by mail so to do, have failed to put the building in a safe condition or to demolish it or (ii) for an order requiring the owner or owners of record

-2-

to demolish, repair, or enclose the building or to remove garbage, debris, and other hazardous, noxious, or unhealthy substances or materials from the building. It is not a defense to the cause of action that the building is boarded up or otherwise enclosed, although the court may order the defendant to have the building boarded up or otherwise enclosed. Where, upon diligent search, the identity or whereabouts of the owner or owners of the building, including the lien holders of record, is not ascertainable, notice mailed to the person or persons in whose name the real estate was last assessed is sufficient notice under this Section.

The hearing upon the application to the circuit court shall be expedited by the court and shall be given precedence over all other suits. Any person entitled to bring an action under subsection (b) shall have the right to intervene in an action brought under this Section." 65 ILCS 5/11-31-1(a) (West 2006).

¶ 5 The trial court conducted a bench trial, at which plaintiff had the burden to prove that the building was (1) "dangerous and unsafe" (65 ILCS 5/11-31-1(a) (West 2006)) and (2) "beyond reasonable repair" (*Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 131 (2004) (citing *City of Aurora v. Meyer*, 38 Ill. 2d 131, 137 (1967)). As defendant would emphasize in her briefs on appeal in *Foster I*, plaintiff's counsel mentioned in his opening statement that defendant purchased the property in 2005 with financing from First National. Defendant also found it significant that, as the evidence at trial showed, she received an insurance settlement check in connection with the October 2006 fire that was payable to both her and First National. Therefore, according to defendant, plaintiff knew or should have known of the "continuing existence of the mortgage" held by First National. (These facts relate to defendant's claim of deficiency of notice, as we explain below at ¶ 45.)

¶ 6 The court heard testimony from several witnesses on the degree of damage to the building. At one point, plaintiff sought to introduce a November 15, 2006, letter it sent to defendant. In the letter, plaintiff directed defendant "to demolish [the building] *** on or before May 15, 2007." Defendant objected to the letter on hearsay grounds. The court admitted the letter "for the limited purpose of showing notice," not to prove the truth of the matters stated in the letter.

¶ 7 In closing argument, defendant asserted, *inter alia*, that plaintiff "failed to prove *** that the notice which [it] sent [to her] [was] compliant with the law, that [it] gave [her] a reasonable opportunity to repair the building." Thus, defendant's complaint regarding notice was that she was not provided an opportunity to make repairs. She did not claim that some other party, such as a lienholder, did not receive notice of the demolition suit.

¶ 8 In a written opinion, the trial court rejected defendant's arguments and determined that plaintiff met its two-pronged burden of proof under *City of Aurora* and *Stokovich*. In particular, the court held that plaintiff's November 2006 letter satisfied the notice provision of section 11-31-1(a).

¶ 9 Defendant filed a posttrial motion, arguing in part that, since the trial court did not admit the "contents" of the November 2006 letter, it was "impossible for [plaintiff] to prove that it complied with [section 11-31-1(a)]." Defendant further asserted that plaintiff "failed to introduce evidence that the lien holder of record was properly notified as per [section 11-31-

1(a)]." The record shows that the motion was heard but contains no transcript or other account of the hearing.

¶ 10 The trial court denied the posttrial motion and issued an order authorizing plaintiff to demolish the building. The court stayed the judgment pending appeal.

¶ 11 On appeal in *Foster I*, defendant made three main arguments. First, she contended that plaintiff failed to prove that the building was "dangerous and unsafe" under section 11-31-1(a), as there was no evidence that the building threatened "public safety," *i.e.*, the community at large and not just those who entered onto the premises. Applying principles of statutory construction, we concluded that "a structure may be deemed 'dangerous and unsafe' under section 11-31-1 even if the danger is confined to those connected to the property." *Foster I*, 405 Ill. App. 3d at 74. As defendant had "agree[d] *** that the damage to the building rendered it uninhabitable," we held that plaintiff sustained its burden to prove that the building was "dangerous and unsafe." *Id.*

¶ 12 Second, defendant disputed plaintiff's proof that the building was damaged beyond reasonable repair. In making its determination under this second prong of the *City of Aurora*/*Stokovich* analysis, the trial court borrowed from plaintiff's zoning ordinance, under which a nonconforming building that was damaged to the extent of more than 50% of its replacement cost could not be rebuilt or reoccupied for any nonconforming use (the 50% ordinance).[1] The trial court held that repair was unreasonable because the 50% ordinance prohibited it. Defendant argued to us that the trial court's use of the 50% ordinance as a standard for the reasonableness of repair was erroneous, but we disagreed. We acknowledged that the ordinance employed a different standard for calculating the reasonableness of repair than the standard the supreme court set forth in *Stokovich*. The supreme court stated: "*City of Aurora* requires that the second finding–that the building is beyond reasonable repair–must be based on a comparison of the cost of repair with the value of the building." *Stokovich*, 211 Ill. 2d at 131. We noted in *Foster I* that, while the 50% ordinance "compares all of the damage to a building with the replacement cost of the building, *** the *Stokovich* test compares the cost of repairing the dangerous conditions with the value of the building." *Foster I*, 405 Ill. App. 3d at 79. We did not find the "discrepancy" decisive, however. We reasoned that *Stokovich* did not

"preclud[e] a finding that repairs may be unreasonable for some reason other than cost. Rather, we interpret the supreme court's statement as dictating the means for the normal, cost-based reasons presented in [*Stokovich* and *City of Aurora*] for why a repair might not be reasonable. The repair in this case is unreasonable because it is not allowed under plaintiff's ordinance, even if its cost might otherwise make it reasonable." *Id.* at 79-80.

In *Stokovich* and *City of Aurora*, "repair was unreasonable due to cost," but "[h]ere, repair is unreasonable based on another factor: the ordinance barred such repair." *Id.* at 80 n.6.

¶ 13 Defendant's third main contention was that plaintiff failed to comply with the 15-day notice provision of section 11-31-1(a). That section allows the corporate authorities of a

_____

[1]Defendant did not dispute in *Foster I* (see 405 Ill. App. 3d at 64), and does not dispute here, that the building was a nonconforming structure.

municipality to "apply to the circuit court *** for an order authorizing action to be taken with respect to a building if the owner or owners of the building, including the lien holders of record, after at least 15 days' written notice by mail so to do, have failed to put the building in a safe condition or to demolish it." 65 ILCS 5/11-31-1(a) (West 2006). Defendant argued first that she herself did not receive proper notice. We held that the November 2006 letter from plaintiff was proper notice to defendant. *Foster I*, 405 Ill. App. 3d at 82. We rejected defendant's further contention that the letter was ineffective as notice because it did not inform her of the right to repair the building. We reasoned:

> "[A]lthough the statute (and case law) literally says that notice of a right to repair is required (and, as explained in *Stokovich*, is an important reason the statute is constitutional (see *Stokovich*, 211 Ill. 2d at 130)), we cannot interpret that rule as extending to cases where, for reasons extrinsic to section 11-31-1 itself, there is in fact no right to repair. It would be strange indeed to interpret the statute as requiring a municipality to tell a homeowner falsely that she has a right to repair before the municipality pursues a demolition action, and we will not lend section 11-31-1 such a construction." *Id.* at 82-83.

(We clarified in a footnote that we were not holding that "notice is unnecessary if it is later determined that there is no right to repair because repair is too costly and thus not reasonable under the test articulated in *Stokovich*." *Id.* at 82 n.10.)

¶ 14    Yet plaintiff did not, we found, demonstrate full compliance with the notice provision of section 11-31-1(a), as there was "no evidence that notice was given to any lienholders of record, as contemplated by section 11-31-1." *Id.* at 83. We noted that the trial testimony suggested that there was a mortgage on the property. *Id.* at 84. Defendant argued to us that (as quoted from her brief) "the notice requirements of [section] 11-31-1," including notice to lienholders, "must be followed before suit for demolition can be filed." "There is good reason," we explained, "the legislature would have acted to require notice to lienholders of an action to demolish a building." *Id.* at 84. "[A] lienholder *** unquestionably has an interest in the outcome of demolition proceedings, both because of its interest, as a lienholder, in the building's continued existence (so that the building may continue to secure the obligation), and because section 11-31-1 contemplates the subordination of all prior liens to a new lien in favor of the municipality for the cost of any demolition or repair conducted by the municipality." *Id.* at 85. We then stated:

> "[E]ven if the notice provision of section 11-31-1(a) allows the filing of a demolition action without notice to owners and lienholders, it does require that the owners and lienholders receive notice *** prior to the trial court's entry of a demolition order." *Id.*

¶ 15    Because the record did not show that notice was provided to any lienholders before the demolition order was entered, and because plaintiff did not dispute that there was no such showing, we vacated the demolition order and remanded

> "for the trial court to determine whether there are, indeed, any lienholders and, if so, whether they were notified. If there was no deficiency in notification, the trial court may reenter its demolition order for the reasons stated herein. If there was inadequate notice to a lienholder, the trial court must ensure proper notice and hear the lienholder's

objections, if any, before entering (or declining to enter) a demolition order." *Id.* at 86. We clarified that, as with the notice to defendant, notice to a lienholder would not need to include "notice *** of an illusory right to repair." *Id.* at 83.

¶ 16        Subsequently, defendant filed a petition for rehearing. She contended that we should have instructed the trial court to dismiss plaintiff's action if a necessary party were identified on remand and plaintiff refused to join that party:

> "At oral argument, it was evident that a necessary or indispensable party might have been omitted. As noted in the [o]pinion, [p]laintiff has not disputed the assertion that no notice was provided to a lien holder. [Citation.] The [c]ourt has properly vacated the judgment of the trial court so that this may be determined. However, the [c]ourt merely requires the trial court to allow [p]laintiff to provide proper notice and then to hear the lien holder's objections. The omission of a party by [p]laintiff, however, would require a finding that the judgment is void. See *Hobbs v. Pinnell*, 17 Ill. 2d 535, 162 N.E.2d 361 (1959) (trial court should not proceed to a decision on the merits when an indispensable party has been omitted and a final decree cannot be made without materially affecting his interests)."

Accordingly, defendant asked us to

> "modify [our] [o]pinion to instruct the trial court to allow [p]laintiff to join the necessary party if it so chooses. If [p]laintiff chooses to join the party, a new trial may be had. If [p]laintiff chooses not to join the party, the suit should be dismissed."

¶ 17        We denied the petition, but added a footnote stating:

> "In her petition for rehearing, defendant argues that any failure to involve a lienholder in this litigation should render the judgment void and require a retrial. Thus, defendant asks that we now so order. This argument, however, is one the parties (and lienholder, if applicable) may raise below, after the trial court has determined the extent to which any interested lienholder was deprived of notice; we express no opinion on the issue now." *Id.* at 86 n.12.

¶ 18                                B. Proceedings on Remand From *Foster I*

¶ 19        Our mandate issued on January 18, 2011, and the trial court reinstated the case. On February 14, plaintiff moved the court to reissue its demolition order. Plaintiff noted that a tract index search revealed a single lienholder, First National, which had recorded a mortgage of $355,000 in July 2005. Plaintiff attached to its motion a document entitled "Waiver," purportedly signed by the president of First National. The signature was notarized. The document stated that First National acknowledged receipt of a copy of *Foster I* and "expressly waive[d] its right to any notice as provided in [section 11-31-1(a)] and *** also expressly waive[d] its right to any hearing, including notice thereof, in connection with said matter." Given First National's purported waiver, plaintiff asked the court to issue an order authorizing it to demolish the building if defendant failed to do so within 60 days.

¶ 20        On March 22, defendant moved to dismiss the action. First, defendant asked the court to disregard the purported waiver because it had "not been filed with the [c]ourt but merely

attached to [plaintiff's motion]." Defendant further argued that plaintiff failed to cite "any authority indicating that the mandatory pre-filing notice requirement with lien holders of record may be otherwise satisfied *after trial and judgment* through the presentment of what purports to be a lien holder's 'waiver' " (emphasis in original). Second, defendant maintained that the court would have no jurisdiction over the matter until First National, a necessary party, was joined. Defendant believed that it was "premature" to discuss "the respective rights and obligations of the parties in this matter" until the court acquired jurisdiction over First National. Defendant requested that she be given leave to file an additional motion if the court determined that it had jurisdiction.

¶ 21 At the May 27 hearing on the motion to dismiss, the trial court declined to consider the purported waiver, as it was an "exhibit" and "[First National] did not file anything with the [c]ourt." The court nonetheless denied the motion to dismiss, conditioned upon plaintiff providing "notice to lienholder [First National] in compliance with [section 11-31-1(a)]." The court directed that the notice include copies of plaintiff's complaint for demolition and our decision in *Foster I*.

¶ 22 On June 1, plaintiff filed its "Notice to Demolish Building at 5024 Barnard Mill Road, Ringwood, Illinois." The document stated that First National was "hereby given notice, pursuant [to section 11-31-1(a)], to demolish the building" and that, if First National "faile[d] to demolish said building," plaintiff would appear before the trial court on June 22 "and request the court to enter an order of demolition of said building." The proof of service indicated that the notice was mailed to First National on June 1.

¶ 23 On June 22, defendant moved to strike the June 1 notice as deficient because (1) the notice required by section 11-31-1(a) must *precede* a suit for demolition, and here the matter had already gone to trial; and (2) even if timely, the notice failed to inform First National of its right to repair the building. At the hearing on the motion, plaintiff argued that the trial court had no authority to go beyond our directions in *Foster I* to "ensure proper notice and hear the lienholder's objections, if any, before entering (or declining to enter) a demolition order" (*Foster I*, 405 Ill. App. 3d at 86). Plaintiff argued that, in compliance with these directions, First National was given notice of plaintiff's request for a demolition order, and it made no difference that the complaint had already been filed and gone to trial. According to plaintiff, the trial court had no authority even to entertain defendant's argument that notice under 11-31-1(a) must precede a suit for demolition.

¶ 24 Defendant responded that our footnote 12 in *Foster I* permitted her to argue on remand that "any failure to involve a lienholder *** render[ed] the judgment void" (*id.* at 86 n.12).

¶ 25 The trial court denied the motion to dismiss, reasoning that "notice *** prior to the entry of [the] demolition order" is "sufficient" under section 11-31-1(a). Defendant then asked for leave to file "another motion." Counsel said:

"I indicated to the [c]ourt in previous pleadings [specifically, the March 22 motion to dismiss], that, if we got to the point where the [c]ourt had jurisdiction, which I don't believe we're at yet, but that's water under the bridge, that [defendant] would ask for leave to file a motion for a new trial based on the failure to include a necessary party at the outset of the litigation. So I would like leave to file that motion so that it is fully

briefed and in the record, Your Honor."

¶ 26 The trial court entered an order permitting defendant to file "an additional motion as to the nature of the proceedings required at this juncture."

¶ 27 On July 25, defendant filed a motion for a new trial or additional evidentiary proceedings. Defendant raised four points: (1) the notice required by section 11-31-1(a) is a prerequisite to a suit for demolition, and so the court's judgment authorizing demolition was void because First National, a lienholder of record, did not receive notice prior to suit; (2) First National was a necessary party, whose rights could not be protected in its absence, and so the judgment authorizing demolition was void; (3) the court should reopen the evidentiary record to allow evidence of the current state of the building, as defendant would testify to repairs she made since the proofs were closed almost three years ago; and (4) *Foster I* suggested that use of municipal ordinances in determining the reasonableness of repair "is permissive and not mandatory," and the court should reconsider its use of the 50% ordinance.

¶ 28 At the hearing on the motion, the trial court again held that the June 1 notice provided to First National satisfied section 11-31-1(a). The court further held that it had no authority on remand to reconsider the applicability of the 50% ordinance or take additional evidence on the condition of the building. On September 13, the court entered an order denying defendant's motion.

¶ 29 Thereafter, on September 23, the trial court entered an order directing defendant to demolish the building within 30 days or else plaintiff would have authority to demolish it.

¶ 30 On October 13, defendant filed a motion to reconsider, arguing that the trial court's interpretation of the notice provision of section 11-31-1(a) "render[ed] the statute unconstitutional." The court denied the motion on November 1. Defendant filed her notice of appeal on November 30. On December 7, the court stayed the judgment of demolition.

¶ 31                                    II. ANALYSIS

¶ 32 Defendant renews several of the arguments she made below. First, she contends that plaintiff's failure to serve First National prior to the demolition suit, and First National's consequent absence at the trial on the demolition complaint, require us to remand for a new trial on the complaint.

¶ 33 We deal first with plaintiff's claim that this argument is barred under the law-of-the-case doctrine. "Generally, the law of the case doctrine bars relitigation of an issue previously decided in the same case." *Krautsack v. Anderson*, 223 Ill. 2d 541, 552 (2006). "Courts will not permit parties to relitigate the merits of an issue once decided by an appellate court[;] the proper remedy for a dissatisfied party is by petition for rehearing or by petition for leave to appeal to the Illinois Supreme Court." *Turner v. Commonwealth Edison Co.*, 63 Ill. App. 3d 693, 698 (1978). "Similarly, where a question was open to consideration in a prior appeal and it could have been presented but was not, the question will be deemed to be waived." *Id.* (citing *Kazubowski v. Kazubowski*, 45 Ill. 2d 405, 413 (1970)). "A second appeal brings up nothing except proceedings subsequent to the remandment[,] and a party will not be allowed to present his case for review piecemeal, one part each time." *Id.*; see also *Tribune Co. v. Emery Motor Livery Co.*, 338 Ill. 537, 541 (1929). In fact, where, as here, "an appellate court

reverses a judgment and remands the cause with a specific mandate, the only proper issue on a second appeal is whether the trial court's order on remand is in accord with the mandate." *People ex rel. Madigan v. Illinois Commerce Comm'n*, 2012 IL App (2d) 100024, ¶ 32.

¶ 34 Our opinion in *Foster I* expressly stated that, on remand, once the trial court "determined the extent to which any interested lienholder was deprived of notice," defendant or a lienholder could make the argument that "failure to involve a lienholder in [the] litigation should render the judgment void and require a retrial." *Foster I*, 405 Ill. App. 3d at 86 n.12. Therefore, the trial court properly considered defendant's argument on remand that the demolition judgment was void for plaintiff's failure to join First National. That issue is now before us because defendant preserved it for appeal.

¶ 35 We reject the argument on the merits. First, however, we register our agreement with defendant that the interpretation of section 11-31-1(a) advocated by plaintiff, and accepted by the trial court, is foreclosed by *Stokovich*. Notably, the First District Appellate Court reached the same interpretation in *City of Chicago v. James E. Mulligan Enterprises, Inc.*, 27 Ill. App. 2d 481 (1960). The defendants in *Mulligan* were the owners of a fire-damaged building. The plaintiff brought suit against them under section 23-70.2 of the Cities and Villages Act (Ill. Rev. Stat. 1955 ch. 24, ¶ 23-70.2), a predecessor of section 11-31-1(a). The only manner in which section 23-70.2 differed from the portions of section 11-31-1(a) that are material here is that section 23-70.2 required 30 rather than 15 days' notice. The plaintiff in *Mulligan* asked for an order requiring the defendants to demolish or repair the building or, alternatively, an order authorizing the plaintiff to demolish the building. The defendants remained part of the action through trial, which occurred 15 months after the complaint was filed. At the conclusion of the trial, the court issued an order authorizing the plaintiff to destroy the building. *Mulligan*, 27 Ill. App. 2d at 484-86.

¶ 36 On appeal, the defendants claimed that the judgment authorizing demolition was invalid because they did not receive the requisite 30-day notice under section 23-70.2. The defendants claimed that the 30-day notice was a "condition precedent to the filing of suit." *Id.* at 486. The appellate court disagreed and held that the plaintiff's inclusion of the defendants in the demolition lawsuit, which lasted 15 months, was sufficient notice of the plaintiff's intent to have the building repaired or demolished. The court observed that section 23-70.2 "does not say that notice is a condition precedent to suit nor does it prescribe the form of notice." *Id.* at 488. Moreover, "[t]he time prescribed is related not to the bringing of suit, but to the application for an order directing demolition." *Id.* The court went on:

> "Two things are intended to be accomplished by the notice: first, to give the owner the choice of demolishing the structure or putting it in safe condition; and second, having made his decision, to have not less than thirty days within which to comply before the city asked for and got its order from the court. A legal proceeding was contemplated, and it must be assumed that in such a proceeding the legislature knew that time was given for the forming of issue and then trial, and not until then was the city in position to say to the court: 'We now want the order.' To construe the statute as defendants urge would give them not less than sixty days. In fact, it took fifteen months in this case." *Id.*

Elsewhere in the opinion, the court reiterated that

"[n]ot until the end of the trial was the city in a position legally and formally to ask the court for an order directing the demolition of the building. Prior to this the [plaintiff] could only ask for trial, not for an order." *Id.* at 487.

The court noted that the rules of civil procedure allowed the defendants 30 days after service in which to appear and file their pleadings, to which the plaintiff would have 20 days to reply. *Id.* at 486. As it happened, the defendants "not only had the statutory notice [under section 23-70.2] of thirty days, but fourteen times that period." *Id.* at 487. While denying that "there was some basis in the wording of the statute for the argument made by defendants that the service of notice was a condition precedent to suit," the court noted that it would not have found any such basis "controlling," as the defendants' interpretation was "so far out of keeping with the purpose and spirit of the statute," which was "to give the [plaintiff] a quick and effective means of removing those unused and dilapidated structures that present danger and blight." *Id.*

¶ 37        The *Mulligan* court distinguished between the filing of a suit for demolition and the seeking of an order for demolition. According to the court, the process described in section 11-31-1(a), by which corporate authorities "apply to the circuit court *** for an order," is not the demolition suit itself, but a petitioning process that follows the adjudication of the complaint for demolition. The court even seemed to suggest that notice under section 11-31-1(a) would be premature until the complaint for demolition was adjudicated. The supreme court in *Stokovich*, however, outlined a different process under section 11-31-1(a). According to the supreme court's description, the application to the trial court under section 11-31-1(a) is itself the suit for demolition. The court commented as follows in rejecting a constitutional challenge to section 11-31-1:

"Under section 11-31-1 ***, an order of demolition may not be issued by a municipal official. Instead, the municipality must give at least 15 days notice to the property owner of the need to 'put the building in a safe condition or to demolish it.' [Citation.] Only after such notice has been given may the municipal authorities apply to the circuit court for an order of demolition. In that proceeding, the burden of proof is on the municipality as petitioner to prove that the building is 'dangerous and unsafe' or 'uncompleted and abandoned.' Only after meeting that burden may the municipality be authorized to 'demolish, repair, or enclose or cause the demolition, repair, or enclosure' of such a building [citation]. Whether demolition is appropriate is governed by our decision in *City of Aurora*.

* * *

The statute provides procedural due process by means of written notice and a trial on the merits before the circuit court." *Stokovich*, 211 Ill. 2d at 127-29.

¶ 38        *Stokovich* indicates that this "trial on the merits" is the very proceeding at which the corporate authorities must prove that the building is (1) dangerous and unsafe; and (2) beyond reasonable repair. *Id.* at 131. It is, therefore, nothing short of the "trial on the merits" of the complaint for demolition. Under the procedure outlined in section 11-31-1(a), a municipality is permitted to make its own determination that a structure is dangerous and unsafe and not readily repairable. The corporate authorities may bring a suit for demolition,

-10-

but only after providing owners or lienholders of record, as presumptively interested parties, 15-day notice of the suit. During those 15 days, the owner or lienholder may avert the suit by demolishing the building or restoring it to a safe condition. *Stokovich*'s rejection of a due process challenge to section 11-31-1(a) was based in part on the fact that, though municipalities have an interest in seeing hazardous structures "demolished sooner rather than later," the statute provides that owners and lienholders of record must receive notice of a demolition suit and be provided the opportunity to make repairs. *Id.* at 129-30. Noting the specific facts in the case, the court remarked that, though the statutory notice period is "only 15 days," the complaint for demolition was not filed until several months after the property owners were first informed that they had to repair the property or demolish it. *Id.* at 129.

¶ 39    We conclude, then, that First National was, by the letter of section 11-31-1(a), entitled to notice of plaintiff's suit for demolition, not simply of a request for a demolition order subsequent to judgment on the complaint. We disagree with defendant, however, that we must vacate the demolition order and remand for a new trial. Our path to that conclusion is not via the purported waiver attached to plaintiff's March 22 motion to dismiss. The trial court refused to consider that document because it was not filed by First National, but was simply an exhibit attached to plaintiff's motion. Plaintiff argues that "even a constitutional provision for the protection of property rights may be waived" and that the purported waiver "even exceeds compliance with the directions of the mandate in *Foster I*[,] because[,] by its waiver, the [b]ank unambiguously relinquished its rights under [s]ection 11-31-1." This argument fails to address the trial court's apparent concern over the reliability of the document. We decline to address whether the purported waiver was valid and effective, for even without the waiver there is no basis for vacating the demolition order and remanding for a new trial.

¶ 40    Defendant's arguments consist broadly of two approaches: first, First National's presence was a *per se* requirement, and, second, First National's presence was necessary for the protection of its interests. The latter tack fails because the relief we granted in *Foster I* remedied any prejudice to First National from the lack of notice of the demolition suit. In *Foster I*, we vacated the demolition order and directed the trial court to ensure notice to any lienholder of record, and then to "hear the lienholder's objections, if any, before entering (or declining to enter) a demolition order." *Foster I*, 405 Ill. App. 3d at 86. If we had meant to leave unassailable on remand the trial court's *Stokovich*/*City of Aurora* findings as to the condition of the building, and to afford the lienholder simply the chance to remediate the hazardous condition of the building, we would not have expressly allowed the lienholder to make "objections." Nor would we have left the lienholder to make only formal "objections" to the notice of an impending demolition. Rather, our intent was to afford the lienholder the substantive opportunity to challenge plaintiff's proof on the complaint for demolition. The June 1 notice sent to First National informed it that, if it did not demolish the building within a certain time, plaintiff would appear on June 22 to request an order for demolition. Appended to the notice were copies of plaintiff's complaint for demolition and our opinion in *Foster I*. First National should have ascertained from *Foster I* that the complaint was included with the notice so that First National could frame, for presentation on June 22, suitable challenges to plaintiff's alleged grounds for demolition under *Stokovich* and *City of*

-11-

*Aurora*. More than five months passed between the June 1 notice and defendant's November 30 notice of appeal, during which time First National never made an appearance or filed any document with the court. First National had a suitable opportunity to protect its interests, but it let that opportunity pass.

¶ 41 Defendant challenges the notice provided to First National on remand because it did not inform First National of the right to repair the building. Defendant made substantially the same argument in *Foster I*. Though, in *Foster I*, First National had not yet been identified, defendant argued that any notice under section 11-31-1(a) regarding her building would have to inform the owner or lienholder of the right to repair. We rejected that argument. We affirmed the trial court's holding that repair of the building would be unreasonable because the 50% ordinance prohibited repair. Accordingly, there was no right of repair of which to inform either an owner or a lienholder. That holding is the law of the case, and we see no reason to disturb it. Relatedly, defendant renews her argument that it was error for us to hold, under *Stokovich* and *City of Aurora*, that the reasonableness of repair can be determined by the ordinances of the governmental body in which the building is located. We will not upset *Foster I*'s holding on this issue either.

¶ 42 We note that, even if our directions on remand in *Foster I* had not remedied the failure to provide First National notice of the suit for demolition, we would still affirm the judgment for demolition, as defendant has not persuaded us that First National's interests were not protected in the original proceeding. Defendant claims that First National was a necessary party to the suit. She cites *First State Bank & Trust Co. of Hanover Park v. Winfrey*, 165 Ill. App. 3d 767 (1987), where the plaintiff filed a complaint against the owner of a business, Illinois Wrecking Company (the company). The owner was named both individually and as owner of the company. The owner was served but the company was not. The owner appeared and moved to dismiss the complaint for failure to serve the company. Months later, without having ruled on the motion, the trial court dismissed the action for want of prosecution. Later, the case was reinstated and a default judgment was entered against the owner. The court subsequently denied the owner's motion to vacate the default judgment. The owner appealed the denial, and the appellate court reversed. The court reasoned that, since the demolition contract was between the plaintiff and the company, the latter "was an indispensable party to [the] litigation in that it was legally interested and affected by the disposition of the action." *Id.* at 770.

¶ 43 Defendant argues that *Winfrey* compels reversal here. We disagree. First, we must clarify *Winfrey*'s statements about nonjoinder of necessary parties. The court said:

"Whenever a party has been omitted whose presence is so indispensable to a decision of the case or the merits that a final order cannot be made without materially affecting its interests, the court should not proceed to a decision on the merits. [Citation.] A necessary party is one who has a legal or beneficial interest in the subject matter of litigation and will be affected by the action of the court. [Citation.]" *Id.*

The second statement in this extract sets forth the general definition of a necessary party. See *Crum & Forster Specialty Insurance Co. v. Extended Stay America, Inc.*, 375 Ill. App. 3d 654, 665 (2007) (same definition). The first statement contains what is, in fact, a more

stringent standard that courts now apply only to tardy objections to nonjoinder of an allegedly necessary party. The *Winfrey* language can be traced to *Gaumer v. Snedeker*, 330 Ill. 511, 515 (1928):

> "Whenever a party has been omitted whose presence is so indispensable to a decision of the case upon its merits that a final decree cannot be made without materially affecting his interests, the court should not proceed to a decision of the case upon the merits. The objection may be made by a party at the hearing or on appeal or error, and the court will upon its own motion take notice of the omission and require the omitted party to be made a party to the litigation even though no objection is made by any party litigant."

¶ 44    Echoes of the *Gaumer* language are found in *Allied American Insurance Co. v. Ayala*, 247 Ill. App. 3d 538, 543-44 (1993), which states the contemporary approach to nonjoinder objections:

> "It is well established that any party, or the court, *sua sponte*, may raise the issue of the absence of a necessary party at any time in the trial court, or for the first time in a reviewing court. [Citations.] However, objections to nonjoinder not made until the final stage of a proceeding will receive little favor. [Citation.] Courts should reject late objections, such as those made after judgments, unless the absent party was deprived of material rights without being heard or the absent party's interests in the litigation are so interconnected with the appearing parties' interests that the presence of the absent party is absolutely necessary. [Citation.]"

See also *Boddiker v. McPartlin*, 379 Ill. 567, 575 (1942) ("[W]here objection to non-joinder is not made until the final stage of the proceeding it will receive little favor by the courts, and in such case, to be of avail, it must appear that the decree or order will have the effect of depriving the party omitted of some material rights without a hearing."). In *Boddiker*, *Allied American*, and *Crescio v. Crescio*, 365 Ill. 393 (1937), the court applied the elevated standard because the objection to nonjoinder was tardy. See *Boddiker*, 379 Ill. at 574-75 (in a proceeding in chancery, objection was not raised before the special master (but the court did not indicate whether the objection was made in the subsequent proceeding before the chancellor)); *Crescio*, 365 Ill. at 396 (objection first raised in a posttrial motion); *Allied American*, 247 Ill. App. 3d at 544 (objection not made until closing arguments). By contrast, the owner in *Winfrey* first raised the nonjoinder objection in a motion to dismiss before trial.

¶ 45    We hold that, under the timeliness criteria in the foregoing cases, defendant's objection to the nonjoinder of First National was tardy. Defendant did not raise the issue of notice to lienholders until her posttrial motion.[2] Accordingly, defendant now must demonstrate that First National "was deprived of [its] material rights" or that its "interests in the litigation *** are so interconnected with [defendant's] interests that [First National's] presence was

_____

[2]Even then, defendant did not mention First National specifically–yet, as she claimed on appeal in *Foster I*, there were indications at the bench trial that First National might have been a current mortgagee. Defendant cited these indications in *Foster I* to show that plaintiff had no excuse for failing to notify First National, but those same facts now work against defendant as the party with the burden to show that First National was a necessary party.

absolutely necessary."[3] Defendant makes no assertion about First National's particular interests in the proceeding (and in fact does not even reference the amount of the mortgage held by First National), but rather appears to assume that, because section 11-31-1(a) requires notice to any lienholder of record, the lienholder must be an indispensable party in any given proceeding for a demolition order. This reasoning would prevail here if notice under section 11-31-1(a) were an absolute mandate such that a new trial is, without exception, compulsory whenever notice to an owner or lienholder is omitted. We see nothing in the statute, however, to suggest that a lack of notice cannot be remedied, such as our disposition in *Foster I* (and the trial court's actions on remand) accomplished by vacating the demolition order and ensuring that lienholders received both notice of and an opportunity to contest the complaint for demolition. As for constitutional concerns, we recognize that *Stokovich* determined that section 11-31-1(a) "provides procedural due process by means of *written notice* and a trial on the merits." (Emphasis added.) *Stokovich*, 211 Ill. 2d at 129. We protected First National's due process rights by vacating the demolition order and ensuring that First National was provided an opportunity to participate in the demolition suit.

¶ 46   Defendant also contends that, irrespective of First National's particular interest in the proceeding, its absence rendered the demolition judgment void for lack of subject-matter jurisdiction.[4] Defendant cites no authority for the assertion, nor do we believe that she could have found any in Illinois since *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002), which held that "[w]ith the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution." Section 9 of article VI extends the jurisdiction of the circuit courts to all "justiciable matters." Ill. Const. 1970, art. VI, § 9. "Generally, a 'justiciable matter' is a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota*, 199 Ill. 2d at 335. Here, we are not reviewing administrative action, and the justiciability of the matter at hand was not affected by First National's absence.

¶ 47   Defendant's final argument on appeal is that the trial court erred in denying her motion to take evidence on the current condition of the building. We find no error.

"The mandate of an appellate court is its judgment which, upon transmittal to the trial court, revests that court with jurisdiction. Thereupon, a trial court must follow the specific directions of the appellate court's mandate to the letter to insure that its order or decree is in accord with the decision of the higher court. The trial court may only do those things directed in the mandate and has no authority to go beyond dictates of the mandate." *Fidelity & Casualty Co. of New York v. Mobay Chemical Corp.*, 252 Ill. App.

---

[3]Our giving defendant permission in *Foster I* to challenge, on remand, the demolition judgment as "void" (see *Foster I*, 405 Ill. App. 3d at 86 n.12) did not imply that defendant was excused for failing to make an objection to nonjoinder earlier.

[4]Defendant frequently speaks of "jurisdiction" generally, but when she speaks more specifically she mentions "subject matter jurisdiction" alone.

3d 992, 997 (1992).

"After a judgment is reversed and the cause is remanded, the trial court can conduct only such further proceedings as conform to the appellate court's judgment." *People ex rel. Department of Transportation v. Firstar Illinois*, 365 Ill. App. 3d 936, 939 (2006).

¶ 48 By allowing a lienholder to raise "objections" on remand, we contemplated the possibility that the evidentiary record would be reopened for the lienholder to challenge plaintiff's proof in support of its complaint for demolition. We did not intimate that the court could reopen the record simply so that defendant could present fresh evidence on the state of the building. The court was correct to adhere to our directions.

¶ 49                                          III. CONCLUSION

¶ 50 For the foregoing reasons, we affirm the judgment of the circuit court of McHenry County.

¶ 51 Affirmed.