NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220036-U

NO. 4-22-0036

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 14, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE CITY OF ROCKFORD, ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| FAIK JOUDEH, NAYEF JOUDEH, ROCK RIVER | ) | No. 19MR259 |
| WATER RECLAMATION, UNKNOWN OWNERS, and | ) | |
| NON-RECORD CLAIMANTS, | ) | Honorable |
| Defendants-Appellants. | ) | Lisa R. Fabiano, |
| | ) | Judge Presiding. |

_____

JUSTICE LANNERD delivered the judgment of the court.
Justices Zenoff and Knecht concurred in the judgment.

**ORDER**

¶ 1   *Held:*   (1) Faik Joudeh's estate did not have the capacity to prosecute the issues it raised on appeal on its own. The appellate court denied the estate's motion to add Joudeh Joudeh, in his role as independent administrator of the estate, as a party to this appeal.

(2) Nayef Joudeh forfeited issues he raised on appeal regarding the trial court's contempt order because he failed to raise the issues in a timely manner in the trial court.

(3) The trial court's orders in this case were not void for lack of jurisdiction.

¶ 2   This case involves the demolition of a commercial building in Rockford, Illinois, which at one time had been owned by defendants Nayef Joudeh and Faik Joudeh. Several individuals involved in this case are named Joudeh. To avoid confusion, we will refer to Nayef Joudeh and Faik Joudeh by their first names. We will refer to their respective sons as Joudeh Joudeh and Mike Joudeh throughout.

¶ 3        Faik died in 2015. His estate was not a party in the underlying case. However, when Nayef filed his notice of appeal in this case on January 14, 2022, Faik's estate was also named as an appellant. Nayef and Faik's estate raised the following issues on appeal. First, they argued the trial court lacked jurisdiction to enter its June 18, 2019, demolition or repair order and all subsequent orders because: (1) plaintiff, the City of Rockford (City), brought its complaint against Faik, who was deceased; (2) Faik's estate was not named but was a necessary party; and (3) the City did not comply with the 15-day written notice requirement found in section 11-31-1(a) of the Illinois Municipal Code (65 ILCS 5/11-31-1(a) (West 2018)). Second, the appellants argue the court's January 8, 2020, contempt order (1) was procedurally and substantively defective and (2) improperly gave demolition authority to the City. We affirm.

¶ 4                              I. BACKGROUND

¶ 5        On March 22, 2019, the City filed a complaint for injunctive and other relief pursuant to section 11-31-1(a) of the Municipal Code (65 ILCS 5/11-31-1(a) (West 2018)) against defendants Faik, Nayef, Rock River Water Reclamation (Rock River), unknown owners, and non-record claimants. The City also filed an affidavit for service by publication pursuant to section 2-206(b) of the Code of Civil Procedure (735 ILCS 5/2-206(b) (West 2018)), naming these same defendants.

¶ 6        The City's complaint alleged Faik and Nayef were the owners of the property at issue here located at 3809 East State Street in Rockford. The property's tax identification number is 12-29-102-002. According to the complaint, on February 12, 2019, the City mailed an order to repair to the named defendants, directing defendants to repair the property at issue within 15 days. The complaint indicated this order was attached to the complaint, but it is not contained in the record on appeal. In addition, the complaint alleged: (1) defendants failed to repair the property

during the period provided by the City; and (2) the City's building code official had condemned the property and determined it was dangerous and unsafe.

¶ 7       Count I of the complaint was titled "Order to Repair Property." However, this count indicated it would be "just and equitable" for the trial court to order defendants to demolish, repair, enclose, or otherwise remediate the subject property.

¶ 8       Next, count II incorporated the allegations found in count I of the complaint and alleged defendants' inaction with regard to the property provided the City with the basis to seek a court order authorizing the City to enter the property "for the purposes of remediating hazardous conditions." According to count II, it would be "just and equitable" for the trial court to provide the City with the authority to remediate the hazards at the property if defendants failed to take actions within a reasonable time. Further, the City asserted certain costs and fees related to enforcement of the City's actions could be imposed as a judgment against the defendants and a lien against the property at issue.

¶ 9       Finally, count III of the complaint sought injunctive relief pursuant to section 11-31-2 of the Municipal Code (65 ILCS 5/11-31-2 (West 2018)).

¶ 10      On May 3, 2019, attorney Roger B. Kellerman filed an answer on behalf of Faik and Nayef. In the answer, Kellerman admitted Faik and Nayef owned the property at issue. That same day, the City filed a motion for a default judgment, asserting Nayef was served personally on April 2, 2019, and Faik, Rock River, and unknown owners and non-record claimants were served by publication between March 27 and April 10, 2019.

¶ 11      At a hearing on June 5, 2019, attorney Kellerman appeared, stating he was present on behalf of "defendant." The City indicated it needed to set a hearing date with regard to count I of its complaint, which the trial court set for June 18, 2019. At that hearing, attorney Kellerman

indicated he was appearing on behalf of "defendants." The City told the court:

> "[T]he City has filed a pretrial complaint seeking injunctive and other relief. We're asking to proceed forward with the hearing today as to Count I of the City's complaint which is seeking an order for the owners to repair the property pursuant to the state demolition statute. We have one witness and evidence to present today as to that.
>
> We would ask the Court reserve judgment as to Counts 2 and 3; 2 is seeking authority for the City of Rockford, if necessary, to demolish or repair the building and Count 3 is for appointment of municipal receiver. It's our intention to attempt to exhaust the ability of the owners to correct the problem themselves before we try to encumber taxpayer resources or ask a court-appointed receiver to look at the situation."

When asked if he wanted to respond, attorney Kellerman said no.

¶ 12        Nelson Sjostrom, who was the City's building code official and a licensed real estate agent, testified for the City. He stated he had been to the property numerous times because of vagrants at the property, problems with water services, and other property damage claims. Sjostrom described the property as a long strip mall running perpendicular to State Street with numerous rental spaces that were vacant. He asserted it would not be fiscally responsible to salvage the property based on its condition. According to Sjostrom's testimony, the building had been damaged by extensive roof leaks and water pipe breaks; vagrants had broken into the building and through the walls between separate units; individuals had stolen copper wire and plumbing from the property; and the property was and had been an open, dangerous, and immediate hazard to the community. Sjostrom indicated the property owners could accomplish the demolition of the

building within two weeks to a month. Neither the City nor attorney Kellerman called any additional witnesses.

¶ 13    The City then argued to the trial court the property was a hazard to the community and needed to be addressed. Based on the information presented at the hearing, the City indicated it was reasonable to ask defendants to remediate or demolish the property within 30 days. The City also asserted some activity on the site should be initiated within 14 days. Attorney Kellerman indicated repairs would take longer than 14 days. The City said initiating repairs within 14 days would be sufficient if the defendants wanted to repair the property. However, based on the evidence presented at the hearing, the City did not think repair would be a financially viable path for defendants. According to the City, "[Defendants] could today go get *** mechanical, plumbing, electrical, roofing permits, and all the other permits. I think that's easily accomplishable within 14 days. Certainly[,] we would understand rehabilitation of the property is going to take significantly longer than 30 days."

¶ 14    The trial court found the building presented an immediate hazard and granted the City's petition as to count I, ordering defendants to take action within 14 days to either begin demolition or rehabilitation of the property. When the court asked the City if it was asking for anything else, the City responded, "We did request a 30[-]day date for completion of action, but we're open to, obviously, extending that out. But I'd like that to be reflected somewhere in this order." The City also asked the court to enter a default judgment against the unknown owners and non-record claimants and for leave to issue an alias summons to Rock River.

¶ 15    On June 18, 2019, the trial court issued a written order finding the property was "open, dangerous, and an immediate hazard to the community." Further, the court found the City had provided Faik, Nayef, the unknown owners, and non-record claimants with all required notices

and found the unknown owners and non-record claimants to be in default. In addition, the court found "[d]efendants have failed or refused to address the condition of the Subject Property." The court order "commanded" Faik and Nayef "to demolish, repair, enclose, or otherwise remediate all hazards at the Subject Property within 30 days." The court also ordered Faik and Nayef to "commence demolition, repair, or other remediation within 14 days of this order." Further, the court indicated an alias summons could issue for Rock River.

¶ 16    On August 7, 2019, the City filed a petition for a rule to show cause. The petition asked the trial court to issue a rule or order requiring Faik and Nayef to show cause, if any, why a finding of contempt should not be entered for their failure to comply with the court's June 18, 2019, order. The City indicated it served the petition for rule to show cause on both attorney Kellerman and Rock River.

¶ 17    On August 12, 2019, attorney Kellerman filed, with proof of service to both Faik and Nayef, a motion to withdraw as counsel of record for both men and a notice to both men indicating they should retain other counsel or provide an address to the circuit court clerk for notices to be sent. On August 21, 2019, the trial court entered an order allowing attorney Kellerman's motion to withdraw and continued the hearing on the petition for rule to show cause. On October 16, 2019, the court issued a rule to show cause, setting a hearing for October 30, 2019. On October 30, 2019, the hearing was continued until November 13, 2019.

¶ 18    On November 5, 2019, the City filed a motion for leave to file an amended complaint *instanter* to add Greenpoint Mortgage Funding, Inc. (Greenpoint), because it held a mortgage on the property in the amount of $930,000 dated September 27, 2005, recorded October 3, 2005. This motion was never granted, probably because of information obtained by the City between November 5 and completion of the hearing on November 13, 2019.

¶ 19        At that November 13, 2019, hearing, Joudeh Joudeh and Mike Joudeh were both present without counsel. It does not appear either man entered an appearance or provided any sworn testimony. However, the trial court discussed the case with the men. According to the report of proceedings for the hearing, Joudeh Joudeh indicated he had a power of attorney for his father, Nayef. Mike Joudeh indicated he had a power of attorney for Faik, who was deceased. (Although not raised by the parties, it appears the court reporter incorrectly identified Joudeh Joudeh as Mike Joudeh and vice versa. Neither man identified himself before speaking, and it appears the court did not call either man individually by name before either man spoke. Later, during the proceedings in this case, Mike Joudeh and Joudeh Joudeh made statements indicating Mike was Nayef's son and Joudeh was Faik's son. However, because the record is not clear, we summarize the hearing as it was transcribed.)

¶ 20        Joudeh Joudeh told the trial court his father is diabetic and was having issues with his colon and was not fit to make the trip from Cook County to Rockford. The court asked the City if it wanted the property demolished. The City responded repair would be sufficient, but the City indicated it did not think defendants had done any repairs. Joudeh Joudeh told the court "we can't afford the mortgage on the property." The record is not clear who Joudeh Joudeh was referring to when he referred to "we." Joudeh Joudeh indicated "we" were negotiating with the bank regarding the mortgage in 2016 and "we" put a "substantial amount of money into the building in 2016." According to Joudeh Joudeh, "The contact that we had from Capital One is no longer there anymore; so, you know, it took us months and months to get in contact with somebody there." Joudeh Joudeh then indicated Capital One had sold the mortgage on the property to CL45 MW Loan 1 LLC (CL45), which Joudeh Joudeh said he received notice of on November 4. Joudeh Joudeh then told the court "our plan" was to short sell the property. He said "we" do not have more

money to put into the property and "we" hope CL45 will accept a short sell on the property.

¶ 21    The trial court indicated it could not issue a rule to show cause with regard to Faik if he was deceased and asked the City how it wanted to proceed. The City indicated something needed to be done with the property. According to the City, CL45 had filed a new note in the recorder's office the previous day. The court continued the hearing on the rule to show cause against Nayef to see if a deal could be reached with CL45 and granted the City leave to file an amended complaint adding CL45 as a defendant. The City filed its amended complaint that same day. The court scheduled another hearing on December 18, 2019, on the rule to show cause and to see what progress Nayef had made with CL45.

¶ 22    At the scheduled hearing on December 18, 2019, only the City appeared. The City told the trial court it did not know whether Faik was dead. While indicating it had no reason to doubt Faik's son's statement that Faik was dead, the City indicated it had seen no proof of Faik's death. The court scheduled a hearing on the rule to show cause on January 8, 2020.

¶ 23    On January 8, 2020, the City appeared and so did Mike Joudeh. Nayef failed to appear. Mike Joudeh told the trial court he was Nayef's son and had a power of attorney for Nayef because of this property since 2016. Mike Joudeh also indicated Faik was deceased and Nayef had health problems. The court told Nayef's son that he could not represent his father in court. The City indicated it was asking for a contempt ruling or order, noting the property had sat vacant for some time; it was "out of compliance"; squatters had been living at the property, engaging in a lot of drug use; and nothing had been done to the property.

¶ 24    The trial court made the following statement:

"So it looks like June 18th, 2019, an order was entered requiring Faik *** and Nayef *** to demolish, repair, enclose, or otherwise remediate. And I understand

- 8 -

Faik *** cannot do that. He's not living. So this is to determine whether Nayef ***

should be found in contempt for failing to abide by that order."

Later in the hearing, the court found Nayef to be in contempt. The court then discussed with Mike Joudeh whether his father understood the consequences of being held in contempt. Mike Joudeh said his father knew "that we're in trouble with the property." Mike Joudeh said he had told his father that "we're working—trying to work a deal with the bank." When the court asked Nayef's son if his father understood the court was having a hearing to determine whether Nayef should be held in contempt, Mike Joudeh answered, "I mean, what is that—I mean, in contempt, he would just have a judgment against him for—." The court then told Nayef's son, "No. It's—he's being found not—with not being compliant with a court order."

¶ 25          Nelson Sjostrom, the building code official for the City, then testified vagrants had easy access into the building at that time and the building could easily attract minors as it was not far from a school. Further, even if the building was completely enclosed, it would still be easy to access the building as it had no security and no lights at night at the back of the building. Sjostrom indicated the building had code violations and it would require a significant amount of money to bring the property back into compliance. In addition, Sjostrom testified the building was an obsolete structure.

¶ 26          The City indicated it was in its best interest to have the ability to demolish the building. The City also asked the trial court to hold defendants in contempt, with the ability to purge the contempt by demolishing the building. The court indicated Nayef would have 21 days to demolish the building. If the building was not demolished within 21 days, the court ruled the City could then demolish the building.

¶ 27          While discussing the scheduling of a status hearing for March 25, 2020, Mike

Joudeh asked if he needed to be at that hearing. The trial court indicated the City might be bringing a motion for fines at that time, so Mike may want to appear even though he could not represent his father. Mike then indicated that maybe his cousin, who was the administrator for Faik's estate, could attend the hearing. A discussion then occurred over whether Faik's estate had ever been served. The court indicated it could not fine the estate unless it had been brought into the case as a party. The court told the City it believed the City would need to amend the complaint and serve the administrator or executor of the estate if the City wanted to seek any damages from the estate. The court also stated it had no idea if Faik's estate had any assets.

¶ 28　　　　　After the hearing, the trial court entered a written order on January 8, 2020. At that hearing, the court indicated Nayef was held in contempt of court and had 21 days to demolish the building. However, instead of the written order stating Nayef was held in contempt of court, the order stated Faik was held in contempt of court and could purge the contempt by demolishing the property within 21 days of the order's entry. The written order indicated the City "may demolish the entire property after 21 days." In addition, the order stated, "If the City does demolish the property, the City is able to recover Demolition Costs, Staff time, Discovery of Assets, and all other reasonable expenses from the defendants."

¶ 29　　　　　On January 24, 2020, attorney Kellerman again entered his appearance on behalf of Faik and Nayef. It is noted the entry of appearance was not for Faik's estate. That same day, attorney Kellerman filed a motion on behalf of both men to vacate the trial court's January 8, 2020, order. As to the merits of the January 8, 2020, order, the motion only generally stated that "[d]efendants have a meritorious defense" and the motion was not brought to "hinder or delay justice."

¶ 30　　　　　On April 22, 2020, attorney Kellerman filed a petition for a temporary restraining

order and preliminary injunction on behalf of Faik and Nayef to stop the City from demolishing the property. According to the petition, a hearing had been scheduled for March 25, 2020, with regard to defendant's motion to vacate the January 8, 2020, order. The hearing was canceled by the court clerk because of the COVID-19 outbreak and rescheduled for June 17, 2020. While defendants' motion remained pending, the City planned to immediately demolish the building.

¶ 31      On April 23, 2020, the City filed a motion asking the trial court to dismiss or deny the motion to vacate and the petition for a temporary restraining order because the building was beyond repair and needed to be demolished. The City alleged defendants had willfully ignored the court's order and taken no steps to rehabilitate, remediate, or perform any repairs at the property and allowed the property to continue to deteriorate. In addition, the City noted Nayef failed to appear at the January 8, 2020, contempt hearing. Further, the defendants' motion to vacate the contempt finding contained nothing but boilerplate assertions without providing any factual basis for vacating the order. In addition, the City had already expended approximately $25,000 with regard to the demolition of the property. The City also indicated the cost to complete the required repairs for the building would be $1.4 million, which would be approximately 220% of the building's value. Citing *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 810 N.E.2d 13 (2004), and *Village of Ringwood v. Foster*, 2013 IL App (2d) 111221, 986 N.E.2d 662, the City argued a building is considered beyond repair if the costs of repairing the dangerous property would be more than 50% of the value of the building. The City also argued defendant's request for a temporary restraining order should be denied for many reasons, including a failure to state facts supporting why defendants would prevail in the underlying case.

¶ 32      At a video conference hearing on April 24, 2020, attorney Kellerman indicated Mike Joudeh, who was present, was his client and had a power of attorney for his father, Nayef.

Attorney Kellerman indicated the purpose of the request for the temporary restraining order was to maintain the status quo until the motion to vacate the January 8, 2020, order could be addressed. Kellerman told the trial court Mike Joudeh had paid off the mortgage on the property, obtained sufficient plans from an architect to acquire permits to repair the property, paid the application fee for building permits, and arranged a contractor ready to commence work on the property once the building permits were obtained. As a result, Kellerman indicated no demolition should commence on the property and that Mike Joudeh be given a chance to have the order giving the City authority to demolish the property vacated.

¶ 33        The City responded the demolition process was already underway. It had already expended $25,000 on asbestos abatement on the property. Further, it had equipment on the property ready to demolish the structure. As a courtesy to defendants and the trial court, the City stopped the demolition after it received the motion for a temporary restraining order. The City made similar arguments to those it presented in its motion to deny defendants' motion to vacate and motion for a temporary restraining order, including the cost of repairing the building would be 220% of the assessed value of the property. According to the City, defendants' plan to spend only $300,000 on the property would not address the building's structural issues. The City argued the repairs defendants proposed would be like "putting lipstick on a pig" and the building would still be obsolete.

¶ 34        The trial court denied both the motion for a temporary restraining order and the motion to vacate the January 8, 2020, order. The court also told the City it could proceed with the demolition of the building.

¶ 35        On April 24, 2020, attorney Andrew J. Vella filed a notice of appeal for both Faik and Nayef. On May 22, 2020, attorney Vella, on behalf of only Faik, filed a motion to reconsider

the trial court's denial of defendants' motion to vacate and motion for a temporary restraining order. That same day, attorney Vella filed a motion to voluntarily dismiss Faik's appeal without prejudice. On May 29, 2020, the Second District Appellate Court allowed a motion to dismiss the appeal.

¶ 36    On June 17, 2020, the trial court entered an agreed order giving attorney Bryan P. Lynch leave to file an additional appearance on Nayef's behalf and to file an amended motion to reconsider. On June 19, 2020, attorney Lynch filed his appearance as additional counsel for Nayef.

¶ 37    On July 15, 2020, Nayef filed an amended motion to reconsider prepared by attorney Lynch, asking the trial court to reconsider and vacate its demolition or repair order entered on June 18, 2019, its rule to show cause order entered on October 16, 2019, and its contempt order entered on January 8, 2020. In the amended motion to reconsider, attorney Lynch alleged the property at issue was co-owned by Nayef and Faik's estate. Nayef also raised a variety of different procedural and substantive issues, including arguing the court's contempt order was void because it was directed only at Faik, who the court did not have jurisdiction over because he was dead. Nayef attached to the amended motion what appears to be a copy of a photograph of a "Report of Death of a U.S. Citizen or U.S. Non-Citizen National Abroad" from the United States Department of State indicating Faik died on September 24, 2015, in Saudi Arabia.

¶ 38    On December 3, 2020, in an agreed order, the City withdrew "with prejudice its Certification for any and all demolition costs and fees, whether as attorney fees or otherwise, relating to the demolition of the subject property in this case and Plaintiff waives any right or claim to any and all demolition costs and fees."

¶ 39    On March 12, 2021, the trial court entered its ruling on Nayef's amended motion to reconsider, granting the motion because it concluded the court's January 8, 2020, and April 24,

2020, orders were null and void. The court stated Faik died in 2015 and could not be held in contempt on January 8, 2020. According to the court's written order, "The only Orders that gave Plaintiff City of Rockford the authority to demolish the subject property in this case were the January 8, 2020[,] and April 24, 2020[,] Orders."

¶ 40    On March 25, 2021, the City filed a motion to vacate the trial court's March 12, 2021, order and amend *nunc pro tunc* the court's January 8, 2020, order. On March 26, 2021, the City filed an amended motion to vacate and amend *nunc pro tunc*. The City argued the fact the January 8 order held Faik in contempt was a scrivener's error. According to the motion, the transcript for the January 8, 2020, hearing established the court held Nayef, not Faik, in contempt of court. As a result, the City argued the court's January 8 order was not void and should be amended *nunc pro tunc* to reflect the court's oral pronouncement found in the transcript for the January 8 proceeding.

¶ 41    On May 3, 2021, Nayef filed a response brief opposing the City's motion to vacate the trial court's March 12, 2021, order and amend *nunc pro tunc* the court's January 8, 2020, contempt order.

¶ 42    On December 20, 2021, the trial court issued a memorandum opinion and order. The court granted the City's motion to vacate the court's March 12, 2021, order and to amend *nunc pro tunc* the court's January 8, 2020, order. The court ruled "[t]he order of January 8, 2020, is therefore amended by this Memorandum of Opinion and Order to reflect that Nayef Joudeh was held in contempt, and the order of March 12, 2021, granting the Amended Motion to Reconsider is vacated." The court then addressed the issues in Nayef's amended motion to reconsider it had not addressed in March 2021, stating:

"[Nayef] raises a number of issues in his Amended Motion to Reconsider

- 14 -

that he contends either render the court's orders of June 18, 2019, and January 8, 2020, void or require that they be vacated. Not a single one of these alleged errors was raised at any time during these proceedings prior to this Amended Motion to Reconsider, which was filed well after the demolition order for the property. The time to raise the majority of these issues has long passed. It is so well established that it hardly needs repeating here that a party cannot raise a legal theory or factual issue for the first time in a motion to reconsider, and those issues not raised previously are waived. [Citation.] [Nayef] cannot remain silent during multiple hearings, lose on the merits[,] and then scramble about to find issues to attack the court's orders. [Citation.] That is especially true in the instant case, where the consequences are irrevocable, and the court cannot remedy any errors in the misapplication of the law or the facts and resurrect the building."

The court recognized Nayef could still raise issues challenging its jurisdiction for the first time in a motion to reconsider. However, the court found meritless Nayef's claims it lacked jurisdiction because Faik, who was deceased, was named as a defendant and the court did not have jurisdiction over allegedly necessary parties.

¶ 43       This appeal followed.

¶ 44                    II. ANALYSIS

¶ 45               A. General Principles of Law

¶ 46       Before we delve into the substance of the arguments in this appeal, we will first address some general principles of law. First, it is not proper to raise a new factual argument or legal theory in a motion to reconsider. *Coles-Moultrie Electric Cooperative v. City of Sullivan*, 304 Ill. App. 3d 153, 166, 709 N.E.2d 249, 257 (1999). The purpose of a motion to reconsider is

to make the trial court aware of newly discovered evidence, changes in the law, or that the trial court's prior application of existing law was in error. *North River Insurance Co. v. Grinnell Mutual Reinsurance Co.*, 369 Ill. App. 3d 563, 572, 860 N.E.2d 460, 468 (2006). As a result, any arguments raised by a party for the first time in a motion to reconsider are forfeited unless the argument falls within the proper purpose of a motion to reconsider.

¶ 47　　　　Next, "[a] party cannot complain of error which he induced the court to make or to which he consented." *McMath v. Katholi*, 191 Ill. 2d 251, 255, 730 N.E.2d 1, 3 (2000). " 'It is fundamental to our adversarial process that a party waives his right to complain of an error where to do so is inconsistent with the position taken by the party in an earlier court proceeding.' " *McMath*, 191 Ill. 2d at 255, 730 N.E.2d at 3 (quoting *Auton v. Logan Landfill, Inc.*, 105 Ill. 2d 537, 543, 475 N.E.2d 817, 818 (1984)).

¶ 48　　　　Furthermore, even if an issue was properly preserved in the trial court, an appellant can forfeit arguments on appeal. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires an appellant's brief to include "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." A reviewing court is not a depository into which the appellant may unload his burden of argument and research. *People v. Macias*, 2015 IL App (1st) 132039, ¶ 88, 36 N.E.3d 373. Pursuant to Rule 341(h)(7), "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 49　　　　Finally, this court reviews the judgment of the trial court, not its reasoning. *Vantage Hospitality Group, Inc. v. Q Ill Development, LLC*, 2016 IL App (4th) 160271, ¶ 54, 71 N.E.3d 1. Regardless of the trial court's reasoning, we can affirm the trial court's judgment for any reason found in the record. *Vantage Hospitality Group*, 2016 IL App (4th) 160271, ¶ 54.

¶ 50        B. The Estate's Right to Prosecute This Appeal and Motion to Add a Party

¶ 51        We first note Faik's estate was not a party in the trial court proceedings. However, attorney Lynch included the estate in his notice of appeal. Neither the notice of appeal nor the appellants' brief named an executor or administrator for the estate.

¶ 52        In its brief to this court, the City argued the estate did not have the capacity to prosecute this appeal, quoting *Mareskas-Palcek v. Schwartz, Wolf & Bernstein, LLP*, 2017 IL App (1st) 162746, ¶ 32, 90 N.E.3d 463, for the proposition " '[t]he well[-]established rule in this state is that an estate lacks the capacity to sue or be sued, and any action must be brought by the executor or representative of the estate.' " The City argued in its brief that we should reject all arguments brought on behalf of the estate because the arguments were not brought by a proper party.

¶ 53        The same day appellants filed their reply brief in this court, the estate filed a motion asking to add Joudeh Joudeh, in his role as independent administrator of the estate, as a party to the appeal. The estate does not challenge the law regarding its inability to prosecute this appeal on its own. However, the estate contends we should reject the City's argument because the estate's appeal was authorized by Joudeh Joudeh, the independent administrator of the estate, and was brought on his behalf in his official capacity as the estate's independent administrator.

¶ 54        The estate alleged in the motion that Faik died on or about September 24, 2015, and his estate was opened on or about July 19, 2016, in the Cook County Circuit Court (case No. 2016-P-004477) and remained pending as of the date the motion was filed. Letters of office were issued to Joudeh Joudeh as the independent administrator of the estate on March 1, 2018. We note this was well before the City instituted this case.

¶ 55        In its reply brief, the estate cites *In re Marriage of Schauberger*, 253 Ill. App. 3d 595, 624 N.E.2d 863 (1993), and *Bank of Northern Illinois v. Nugent*, 223 Ill. App. 3d 1, 12, 584

N.E.2d 948 (1991), for the proposition that omitting the name of the estate's independent administrator should be treated as a misnomer and allowed to be corrected. However, the estate provides no real analysis explaining how these cases support its position. In its motion, the estate also cites Illinois Supreme Court Rule 366(a) (eff. Feb. 1, 1994), which provides, in part:

> "(a) Powers. In all appeals the reviewing court may, in its discretion, and on such terms as it deems just,
>
>> (1) exercise all or any of the powers of amendment of the trial court;
>>
>> (2) allow substitution of parties by reason of marriage, death, bankruptcy, assignment, or any other cause, allow new parties to be added or parties to be dropped, or allow parties to be rearranged as appellants or appellees, on such reasonable notice as it may require."

After reviewing both *Schauberger* and *Nugent* and considering our authority under Rule 366, we deny the estate's motion to add Joudeh Joudeh, in his role as the estate's independent administrator, as a party to this appeal.

¶ 56      We first note the situation in this case is easily factually distinguishable from both *Schauberger* and *Nugent*. In *Schauberger*, Clarence A. Schauberger died in November 1991 and his will was admitted to probate. *Schauberger*, 253 Ill. App. 3d at 597, 624 N.E.2d at 865. Clarence's widow, Mary C. Schauberger, renounced Clarence's will and elected to take her statutory share of the estate. *Schauberger*, 253 Ill. App. 3d at 597, 624 N.E.2d at 865. As a result, the executor of Clarence's estate filed a motion asking the trial court to vacate or to expunge a December 1980 order from a prior dissolution case involving Clarence and Mary. *Schauberger*, 253 Ill. App. 3d at 596-97, 624 N.E.2d at 865. The order in question vacated the August 29, 1980, order dissolving Clarence and Mary's marriage. *Schauberger*, 253 Ill. App. 3d at 596-97, 624

N.E.2d at 865. The executor argued the December 1980 order was void for jurisdictional reasons. *Schauberger*, 253 Ill. App. 3d at 596-97, 624 N.E.2d at 865. The executor's motion was denied. *Schauberger*, 253 Ill. App. 3d at 597, 624 N.E.2d at 865.

¶ 57 On appeal, Mary argued, in part, that the motion to vacate or to expunge the December 1980 order was facially defective because the motion was brought on behalf of Clarence's estate instead of the executor of the estate. *Schauberger*, 253 Ill. App. 3d at 598, 624 N.E.2d at 866. However, the Second District indicated the attorney who appeared and argued the motion to vacate the December 1980 order stated in the trial court that he represented the executor of Clarence's estate, and Mary did not challenge the attorney's assertion. *Schauberger*, 253 Ill. App. 3d at 598, 624 N.E.2d at 866. In light of those facts, the Second District held it seemed "clear that the motion to vacate was brought by the executor, and the designation of the estate as the moving party amounted to a misnomer subject to correction, not dismissal." *Schauberger*, 253 Ill. App. 3d at 598, 624 N.E.2d at 866.

¶ 58 In *Nugent*, the plaintiff banks filed a claim on February 28, 1989, against the estate of Edward W. Nugent Jr. (decedent) to collect on two guarantees for credit extended to Classic Auto Leasing, Inc. (Classic), a car leasing business which was owned by decedent from April 1987 until his death in October 1988. *Nugent*, 223 Ill. App. 3d at 5, 584 N.E.2d at 951. After decedent's passing, Classic was controlled by Mary Jane Nugent (Mary Jane), as administrator of decedent's estate. *Nugent*, 223 Ill. App. 3d at 5, 584 N.E.2d at 951. Mary Jane appointed her sons, Michael C. Nugent (Michael) and Edward William Nugent III (Edward), to run the business. *Nugent*, 223 Ill. App. 3d at 5, 584 N.E.2d at 951.

¶ 59 On April 4, 1989, the trial court entered judgment on the claim against the estate for the full amount of the notes, plus interest. In addition to the entry of judgment, the banks filed

an amended three-count complaint, naming as defendants the estate, Mary Jane, Michael, Edward, Classic, and two other Classic employees. The estate filed a motion to dismiss the first two counts of the complaint because count I asked for recovery on the same notes on which the previous judgment was entered and count II could not be maintained against the estate. *Nugent*, 223 Ill. App. 3d at 6, 584 N.E.2d at 951. After arguments on the motion to dismiss, the court dismissed the first two counts of the plaintiffs' amended complaint with prejudice and denied the plaintiffs' motion to amend the complaint further and name Mary Jane in her capacity as administrator of the estate. *Nugent*, 223 Ill. App. 3d at 6, 584 N.E.2d at 952.

¶ 60    The plaintiffs in *Nugent* appealed, in part arguing the trial court erred in denying the plaintiffs leave to amend the complaint and to substitute parties. *Nugent*, 223 Ill. App. 3d at 4, 584 N.E.2d at 951. The Second District held the trial court abused its discretion by refusing to allow plaintiffs to amend their complaint and to name Mary Jane in her capacity as administrator of the estate. *Nugent*, 223 Ill. App. 3d at 13, 584 N.E.2d at 956. The court explained:

> "Parties do not have an absolute right to amend, but may do so only at the trial court's discretion. [Citation.] However, amendments to pleadings should be liberally allowed, unless an opposing party would be prejudiced as a result. [Citation.] A court's decision to allow an amendment will not be disturbed absent an abuse of discretion. [Citation.] Among the factors to be considered in deciding whether discretion was properly exercised is whether the proposed amendment would cure the defective pleading; whether it would cause prejudice or surprise to the other parties; the timeliness of the proposed amendment; and whether previous opportunities to amend the pleadings were allowed. [Citations.]
>
> Assuming *arguendo* that the complaint did not sufficiently state a cause of

action, the court abused its discretion by dismissing the cause with prejudice. As counsel for the plaintiffs stated, the court's finding that the complaint did not provide sufficient facts to state a cause of action does not necessarily mean those facts do not exist. The sufficiency of the complaint was considered only once, and it was not clear that the defect could not be cured. An amendment would have been in furtherance of justice in this case. The court abused its discretion by refusing to allow leave to amend and to name Mary Jane in her capacity as administrator of the Estate." *Nugent*, 223 Ill. App. 3d at 13, 584 N.E.2d at 956.

¶ 61 As previously noted, the estate provides no analysis explaining how these cases support its argument we should grant its motion at this stage of the appeal. As a result, we find this argument forfeited pursuant to Rule 341(h)(7). Regardless of forfeiture, we see no reason why these two cases support the estate's motion that Joudeh Joudeh, in his role as independent administrator of Faik's estate, should be added as a party to this appeal. Neither the estate nor Joudeh Joudeh was a party to the underlying proceeding. Further, Joudeh Joudeh was clearly aware of the trial court proceedings and was present for at least one hearing in this case and chose not to inform the court he was the independent administrator of Faik's estate. In addition, the estate failed to inform anyone, including this court, that Joudeh Joudeh was the independent administrator of the estate until all the briefs were filed on appeal. Mike Joudeh did mention at the January 8, 2020, hearing that his cousin (presumably Joudeh Joudeh) was the administrator of Faik's estate. Although we make no finding as such, it seems reasonable to suspect the estate made a conscious decision not to disclose that Joudeh Joudeh was the independent administrator of the estate for strategic reasons or to avoid possible liability for costs and fees associated with the City's case. Regardless, even assuming, *arguendo*, the failure to include Joudeh Joudeh, in his role as

independent administrator of the estate, was simply an innocent mistake, it would be unjust to allow him to be added as a party at this late stage of the appeal.

¶ 62    As a result, we deny the estate's motion to include Joudeh Joudeh, in his role as independent administrator of the estate, as a party and will not address any arguments raised by the estate on appeal based on its legal inability to prosecute the appeal.

¶ 63    C. Trial Court's Contempt Orders

¶ 64    We next turn to Nayef's arguments regarding the trial court's contempt orders in this case. Nayef complains about issues regarding the petition for rule to show cause, the rule to show cause, and the contempt order in this case. He also asserts the contempt order was defective and improper because it (1) did not identify the specific court order violated; (2) did not indicate whether the contempt was indirect, direct, criminal, or civil; (3) improperly gave demolition authority to the City; and (4) was improperly self-executing.

¶ 65    We note, as did the trial court in its memorandum opinion and order entered on December 20, 2021, that Nayef failed to raise any of these complaints in his motion to vacate the contempt order, in his motion asking the court to temporarily restrain the demolition of the property, or at any other time before the building was demolished. According to the court's memorandum opinion and order, the first time Nayef raised these issues was in his amended motion to reconsider.

¶ 66    In his appellant's brief, Nayef failed to provide this court with any argument the trial court erred in finding these issues were forfeited. Pursuant to Rule 341(h)(7), an appellant forfeits an argument on appeal if he fails to provide the appellate court with sound argument and reasoning. As a result, we find Nayef's arguments on appeal regarding the contempt orders were forfeited pursuant to Rule 341(h)(7). In addition, regardless of forfeiture, the trial court correctly

found Nayef forfeited these arguments in the trial court by not raising them prior to filing his amended motion to reconsider. *Coles-Moultrie Electric Cooperative*, 304 Ill. App. 3d at 166, 709 N.E.2d at 257.

¶ 67                                    D. New Arguments in Nayef's Reply Brief

¶ 68            In his reply brief, Nayef raises some new points he failed to include in his appellant's brief. For example, he argues the "trial court could not and should not have granted demolition relief, especially to the City, given the legal fact that the City presented evidence for and sought relief of repair on Count I" of its complaint, the court should have required the City to proceed on Count II of its complaint if it wanted to demolish the building, and the court's *nunc pro tunc* order did not cure defects in the contempt order. We find these points forfeited pursuant to Rule 341(h)(7), which states, "Points not argued [in the appellant's brief] are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."

¶ 69                                    E. Jurisdiction of the Trial Court

¶ 70            Finally, we turn to Nayef's argument the trial court lacked jurisdiction in this case to enter the repair order and all subsequent orders in this case. If the court lacked jurisdiction, its orders in the case would be void and subject to attack at any time. According to Nayef, the court lacked jurisdiction for several reasons. First, the City filed suit against a deceased person, Faik. Second, the court did not have jurisdiction over a necessary and indispensable party, *i.e.*, Faik's estate. Finally, the City failed to provide the estate, Nayef, and Greenpoint written notice 15 days in advance of filing its complaint as required by section 11-31-1(a) of the Municipal Code (65 ILCS 5/11-31-1(a) (West 2018)).

¶ 71                                    1. *Deceased Defendant*

¶ 72            We first examine Nayef's argument the trial court did not have jurisdiction because

the City named Faik, who was deceased, as a defendant. Defendant relies on *Keller v. Walker*, 319 Ill. App. 3d 67, 744 N.E.2d 381 (2001), for the proposition a trial court lacks jurisdiction where a party files suit against a deceased individual. In that case, the Third District stated: "A deceased person cannot be a party to a suit because such is a nonexistent entity and the proceedings are void *ab initio*. [Citation.] Proceedings against an individual who is deceased at the time of the filing of suit are a nullity. [Citation.]" *Keller*, 319 Ill. App. 3d at 70, 744 N.E.2d at 384.

¶ 73 *Keller* is distinguishable from the situation here because it was a personal injury action and the decedent was the only defendant. In this case, the City filed a complaint pursuant to section 11-31-1(a) of the Municipal Code (65 ILCS 5/11-31-1(a) (West 2018)) against Faik, Nayef, Rock River, unknown owners, and non-record claimants seeking the repair or demolition of a building located in Illinois.

¶ 74 Regardless of whether the City named a deceased individual as a defendant, the trial court clearly had personal jurisdiction over Nayef. Attorney Kellerman filed an appearance on Nayef's behalf in the trial court, and no one disputes the fact Nayef is alive. Further, the court had subject matter jurisdiction over the City's claim. In *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334, 770 N.E.2d 177, 184 (2002), our supreme court held that, "[w]ith the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution." Section 9 of article VI of the Illinois Constitution extends the jurisdiction of our circuit courts to all "justiciable matters." Ill. Const. 1970, art. VI, § 9. "Generally, a 'justiciable matter' is a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota, Inc.*, 199 Ill. 2d at 335, 770 N.E.2d at 184. The City's claim presented

a definite and concrete issue between the City and the owner or owners of the property at issue regarding the status of the property.

¶ 75                                    2. *Necessary Party*

¶ 76          We next address appellants' argument the repair and subsequent orders in this case are void because Faik's estate was not a party in the case. Nayef asserts the estate was a necessary and indispensable party. It appears Nayef is making a nonjoinder objection. In *Foster*, the Second District provided the following description of the contemporary approach to nonjoinder objections:

> " 'It is well established that any party, or the court, *sua sponte*, may raise the issue of the absence of a necessary party at any time in the trial court, or for the first time in a reviewing court. [Citations.] However, objections to nonjoinder not made until the final stage of a proceeding will receive little favor. [Citation.] Courts should reject late objections, such as those made after judgments, unless the absent party was deprived of material rights without being heard or the absent party's interests in the litigation are so interconnected with the appearing parties' interests that the presence of the absent party is absolutely necessary. [Citation.]' " *Foster*, 2013 IL App (2d) 111221, ¶ 44 (quoting *Allied American Insurance Co. v. Ayala,* 247 Ill. App. 3d 538, 543-44, 616 N.E.2d 1349, 1355 (1993)).

The Second District also stated a defendant who is making a tardy objection to the nonjoinder of a party must demonstrate the absent party was either deprived of its material rights or that the interests of both the absent party and the appearing party are so interconnected that the presence of the absent party is absolutely necessary. *Foster*, 2013 IL App (2d) 111221, ¶ 45.

¶ 77          We first note Nayef's objection to the nonjoinder of Faik's estate was tardy because

he did not raise the issue until he filed the amended motion to reconsider. Therefore, it was Nayef's burden to demonstrate Faik's estate was either deprived of its material rights or the estate's interests and Nayef's interests were so interconnected that the estate's presence was absolutely necessary in the case. According to Nayef, the estate was a necessary and indispensable party in this case because the estate had a 50% ownership interest in the property at issue.

¶ 78     During the proceedings in the trial court following Nayef's filing of his amended motion to reconsider, Nayef, through attorney Lynch, asserted the estate had a 50% interest in the subject property. However, Nayef offered no evidence Faik's estate held any interest in the property. It is difficult to find attorney Lynch's claim the estate still held what had been Faik's interest in the property to be anything more than speculation. We note attorney Lynch seemed to have little information about Faik's estate. At a hearing on December 3, 2020, Lynch could not give the court a definitive answer concerning whether an estate was opened after Faik's death. Further, Lynch said he did not know who was the administrator or executor of Faik's estate, if it existed. As a result, Nayef failed to demonstrate the estate was a necessary party.

¶ 79     In addition, although we have already decided this issue based on Nayef's failure to demonstrate the estate was a necessary party, we note it was attorney Kellerman, Nayef's agent, who invited the alleged error in this case by implicitly representing to the City and the trial court that Faik was still alive during most of the proceedings. "A party cannot complain of error which he induced the court to make or to which he consented." *McMath,* 191 Ill. 2d at 255, 730 N.E.2d at 3. Further, although we do not mean to imply Faik is still alive, we do note the only evidence of Faik's death Nayef provided to the trial court was a copy of what appears to be a photograph of a "Report of Death of a U.S. Citizen or U.S. Non-Citizen National Abroad" instead of an actual certified copy of this record from the United States Department of State.

¶ 81        We next turn to Nayef's claim the repair and subsequent orders in this case are void because jurisdiction did not vest in the trial court as a result of the City's alleged failure to satisfy the 15-day notice requirement required by section 11-31-1(a) of the Municipal Code (65 ILCS 5/11-31-1(a) (West 2018)) before filing its complaint. As to this issue, Nayef's brief only states as follows:

> "The City did not present any evidence that it satisfied the condition precedent to applying to [the] circuit court for demolition authority: namely, the giving of 15 days' written notice to all interest-holders, as required by 65 ILCS 5/11-31-1(a). In fact, the very document that the City claimed was proof of its pre[-]filing notice, Exhibit A to its Complaint and Amended Complaint, was omitted from both filings. [Citation.]

> The statutory requirement is clear and was affirmed in [*Foster*, 2013 IL App (2d) 111221, ¶ 38]. A municipality may bring suit after it has provided notices to all owners. *Id.* The City failed to provide to the [e]state, Joudeh, and Greenpoint the statutorily required written notice 15 days in advance of filing its Complaint; thus, jurisdiction never vested in the circuit court, and the subsequent Orders are fatally defective and to be stricken."

We note Nayef provided no authority supporting his assertion jurisdiction did not vest in the trial court. Further, Nayef does not address the court's December 20, 2021, memorandum opinion and order, in which it found "any alleged lack of the 15-day notice is not jurisdictional and thus does not render any orders void *ab initio*." Citing *Foster*, 2013 IL App (2d) 111221, ¶ 45, the trial court indicated the Second District made clear "the lack of the 15-day notice can be remedied by

ensuring notice of the suit and an opportunity to contest the complaint for demolition." Nayef failed to explain why the trial court's reasoning is flawed.

¶ 82    Because Nayef failed to provide any authority for his assertion jurisdiction did not vest in the trial court and because he provided no explanation why the court erred in finding the 15-day notice requirement was not jurisdictional, Nayef forfeited this argument pursuant to Rule 341(h)(7). In addition, Nayef also forfeited this argument because he did not raise this issue until he filed his amended motion to reconsider. See *Coles-Moultrie Electric Cooperative*, 304 Ill. App. 3d at 166, 709 N.E.2d at 257.

¶ 83    Regardless of forfeiture, despite Nayef's claims, he somehow received notice of the case, and nothing was done to the building for months after an appearance was entered on his behalf by attorney Kellerman. Further, as noted earlier, it is not clear from the record the estate had any interest in the property which required it to receive written notification prior to the complaint being filed. Finally, with regard to Greenpoint, the record does not establish it was still a lienholder when the building was ultimately demolished, and quite possibly not even when the case was filed.

¶ 84    On November 5, 2019, the City filed a motion for leave to file an amended complaint *instanter* because it indicated Greenpoint should be named as a defendant in this matter. The City explained Greenpoint had an interest in the property because of a mortgage for $930,000 dated September 27, 2005, and recorded October 3, 2005. However, the amended complaint naming Greenpoint as a defendant was never filed.

¶ 85    Instead, at a hearing on November 13, 2019, attended by attorneys for the City and Joudeh Joudeh and Mike Joudeh, Joudeh Joudeh seemed to indicate "Capital One" had held the mortgage on the property for a period of time (although it is not clear how long) before that

November 13, 2019, hearing. Further, Joudeh Joudeh indicated "Capital One" had sold the mortgage to "CL45 MW Loan." Joudeh Joudeh told the trial court, "We just got this notice, uh, mailed to us on November 4th." The City then indicated it had received a copy of the assignment of the mortgage. After the hearing, the court ordered the City to file an amended complaint within seven days. On November 13, 2019, the City filed an amended complaint that named "CL45 MW Loan 1 LLC" as a defendant.

¶ 86          In addition, the record seems to reflect no one held a mortgage on the property when it was demolished. At a hearing on April 24, 2020, attorney Kellerman and Mike Joudeh indicated the mortgage on the property had been paid off. Based on the facts in this case, Nayef cannot demonstrate that Greenpoint has any rights in this case whatsoever. As a result, Greenpoint's absence as a party did not affect the justiciability of the matter at hand in this case. See *Foster*, 2013 IL App (2d) 111221, ¶¶ 45-46.

¶ 87                                         III. CONCLUSION

¶ 88          For the foregoing reasons, we affirm the trial court's judgment.

¶ 89          Affirmed.